UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

JOSE CALDERO, ANNABELLE G.
GERONIMO a/k/a ANNABELLE G. LEVIEN, and
YAMILET SALTY, *individually and on behalf of all*
*others similarly situated*,

               Plaintiffs,

          v.

MTGLQ INVESTORS, L.P., SELENE FINANCE,
L.P., NATIONSTAR MORTGAGE LLC, FEDERAL
NATIONAL MORTGAGE ASSOCIATION, and
ROBERTSON, ANSCHUTZ, SCHNEID, CRANE &
PARTNERS, PLLC a/k/a RAS BORISKIN LLC,

               Defendants.

-------------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-1831 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiffs Jose Caldero, Annabelle G. Geronimo also known as Annabelle G. Levien, and

Yamilet Salty commenced the above action on behalf of themselves and others similarly situated

on April 3, 2025 against Defendants MTGLQ Investors, L.P. ("MTGLQ"),[1] Selene Finance, L.P.

("Selene Finance"), Nationstar Mortgage LLC ("Nationstar"), Federal National Mortgage

Association ("Fannie Mae"), and Robertson, Anschutz, Schneid, Crane & Partners, PLLC also

known as Ras Boriskin LLC ("Ras Boriskin LLC").[2]  (Compl., Docket Entry No. 1.)  Plaintiffs

filed an Amended Complaint on July 2, 2025 asserting ten causes of action claiming that

---

[1]  The Court notes that Plaintiffs refer to Defendant "MTGLQ" in the case caption but refer to this Defendant as "MLGTQ" in the Amended Complaint and their Opposition.  The Court uses "MTGLQ" as referenced in the case caption.

[2]  Plaintiffs initially also named John and Jane Doe Investors 1–10 and John and Jane Doe 1–10 as Defendants but dismissed them from the action on July 1, 2025.  (Notice of Voluntary Dismissal, Docket Entry No. 43; Order dated July 7, 2025.)

1

Defendants conspired to defraud them of surplus money and award themselves inflated compound interest from the foreclosure sale of: (1) Caldero's home located at 76-05 267th Street, New Hyde Park, New York (the "Caldero Subject Property"); (2) Levien's home located at 55-10 102nd Street, Apt. 1A-1 Corona, New York (the "Levien Subject Property"); and (3) Salty's home located at 197 Autumn Avenue, Brooklyn, New York (the "Salty Subject Property") (collectively, the "Subject Properties").  (Am. Compl., Docket Entry No. 44.) Plaintiffs assert five causes of action against Defendants for violations of: (1) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), (*id.* ¶¶ 119–26); (2) New York General Business Law § 349 ("GBL § 349"), (*id.* ¶¶ 127–32); (3) the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c)–(d) ("RICO"), (*id.* ¶¶ 137–69); (4) *prima facie* tort, (*id.* ¶¶ 195–99); and (5) conversion, (*id.* ¶¶ 200–06).  In addition, Plaintiffs allege four claims against Ras Boriskin LLC for violations of: (1) New York Judiciary Law § 487 ("Judiciary Law § 487"), (*id.* ¶¶ 133–36); (2) negligence, (*id.* ¶¶ 170–80); (3) gross negligence, (*id.* ¶¶ 181–84); and (4) legal malpractice, (*id.* ¶¶ 185–89).  Plaintiffs also allege an unjust enrichment claim against MTGLQ, Nationstar, and Fannie Mae, (*id.* ¶¶ 190–94). Plaintiffs seek against all Defendants a declaratory judgment, injunctive relief enjoining Defendants from continuing their alleged unlawful debt collection activities, actual and compensatory damages, treble damages pursuant to RICO and Judiciary Law § 487, statutory damages pursuant to the FDCPA, disbursements, costs, and attorneys' fees.  (*Id.* at 52–53.)

MTGLQ and Selene Finance jointly move to dismiss the Amended Complaint, Nationstar, Fannie Mae, and Ras Boriskin LLC move separately to dismiss the Amended Complaint, and Plaintiffs oppose the motions.[3]  For the reasons discussed below, the Court

---

[3]  (MTGLQ's and Selene Fin.'s Notice of Mot. to Dismiss ("MTGLQ's and Selene Fin.'s Mot."), Docket Entry No. 47; MTGLQ's and Selene Fin.'s Mem. in Supp. of MTGLQ's and

grants the motions and dismisses the Amended Complaint.

## I.    Background

### a.    The parties

Plaintiffs are New York State residents and "consumer[s]" as defined by the FDCPA. (*Id.* ¶¶ 21–23, 120.)  MTGLQ is a Delaware limited partnership that conducts business in the State of New York and is a "debt collector" as defined by the FDCPA.  (*Id.* ¶¶ 24, 120.)  Selene Finance is a Texas limited partnership that conducts business in the State of New York and is a "debt collector" as defined by the FDCPA.  (*Id.* ¶¶ 27, 120.)  Nationstar is a Texas limited liability corporation that conducts business in the State of New York and "regularly attempts to collect debts alleged to be due to another."  (*Id.* ¶ 25.)  Fannie Mae is a government-sponsored enterprise headquartered in Washington, D.C. that conducts business in the State of New York and "regularly attempts to collect debts alleged to be due to another."  (*Id.* ¶ 26.)  Ras Boriskin LLC is a Florida professional limited liability corporation with its principal place of business in Florida.  (*Id.* ¶ 28.)

---

Selene Fin.'s Mot. ("MTGLQ's and Selene Fin.'s Mem."), appended to MTGLQ's and Selene Fin.'s Mot., Docket Entry No. 47-1; MTGLQ's and Selene Fin.'s Reply in Supp. of MTGLQ's and Selene Fin.'s Mot. ("MTGLQ's and Selene Fin.'s Reply"), Docket Entry No. 60; Fannie Mae's Notice of Mot. to Dismiss ("Fannie Mae's Mot."), Docket Entry No. 57; Fannie Mae's Mem. in Supp. of Fannie Mae's Mot. ("Fannie Mae's Mem."), Docket Entry No. 58; Fannie Mae's Reply in Supp. of Fannie Mae's Mot. ("Fannie Mae's Reply"), Docket Entry No. 67; Ras Boriskin LLC's Notice of Mot. to Dismiss ("Ras Boriskin LLC's Mot."), Docket Entry No. 61; Ras Boriskin LLC's Mem. in Supp. of Ras Boriskin LLC's Mot. ("Ras Boriskin LLC's Mem."), Docket Entry No. 62; Ras Boriskin LLC's Reply in Supp. of Ras Boriskin LLC's Mot. ("Ras Boriskin LLC's Reply"), Docket Entry No. 65; Nationstar's Notice of Mot. to Dismiss ("Nationstar's Mot."), Docket Entry No. 64; Nationstar's Mem. in Supp. of Nationstar's Mot. ("Nationstar's Mem."), appended to Nationstar's Mot., Docket Entry No. 64-1; Nationstar's Reply in Supp. of Nationstar's Mot. ("Nationstar's Reply"), appended to Nationstar's Mot., Docket Entry No. 64-2; Pls.' Opp'n to MTGLQ's and Selene Fin.'s Mot., Fannie Mae's Mot., Ras Boriskin LLC's Mot., and Nationstar's Mot. ("Pls.' Opp'n"), Docket Entry No. 71.)

MTGLQ, Nationstar, and Fannie Mae are mortgage noteholders.  (*Id.* ¶ 30.)  Selene Finance and Nationstar are mortgage servicers that manage the loans.  (*Id.* ¶ 31.)  MTGLQ and Nationstar retained Ras Boriskin LLC as a law firm to "collect on consumer debt that [MTGLQ] and Nationstar [ ] claim to own" and "[p]ursuant to those retentions, [Ras Boriskin LLC] files and maintains actions in New York State courts seeking debt collection" for amounts owed on mortgage agreements.  (*Id.* ¶¶ 28, 32.)

### b.    Plaintiffs' allegations

Plaintiffs allege Defendants "collectively engaged in a fraudulent scheme to purposefully miscalculate interest due and owing on residential mortgages in order to obtain vastly inflated payouts from court-ordered foreclosure sales."  (*Id.* ¶ 11.)  In support, Plaintiffs contend that Defendants "submit[ed] deceptive documentation to New York Courts" that they expected would be "blindly approve[d]" and "prematurely utilize[d] the final monetary judgment award to the noteholders [MTGLQ, Nationstar, and Fannie Mae] awarded in a court's [j]udgment of [f]oreclosure and [s]ale . . . in calculating improper compound interest accrued on a mortgage loan before the [judgment of foreclosure and sale] was actually entered."  (*Id.* ¶¶ 12–13.)  By using the "already-determined [judgment of foreclosure and sale] amount as the basis for the calculation of interest . . . instead . . . of the mortgage principal," Defendants received excess money from the court-ordered foreclosure sale of the Subject Properties and "deprived Plaintiffs . . . of their legal right to be awarded surplus monies." [4]  (*Id.* ¶¶ 11, 14.)

---

[4]  In the Amended Complaint, Plaintiffs seek certification of this action as a collective action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves, individually, and the following class:

> (a) all persons sued, or creditors of such persons or lienholders of liens against the property that was the subject of the foreclosure action in question, in state-court lawsuits related to the collection of debt owed on a mortgage loan document secured by real property, (b) that were sold at auction, (c) in which [Ras Boriskin

### i.    The foreclosure actions

### 1.    The Caldero Subject Property

Caldero had a mortgage on the Caldero Subject Property.  (*Id.* ¶ 57.)  On January 24, 2017, Fannie Mae commenced a foreclosure action, Index No. 701105/2017, against Caldero in the Supreme Court of the State of New York, Queens County (the "Caldero State Court Action").  (*Id.* ¶ 58; *see* Summons and Compl., annexed to Decl. of Eric S. Latzer, Esq. in Supp. of Ras Boriskin LLC's Mot. ("Latzer Decl.") as Ex. 1, Docket Entry No. 63-1.)[5]  On July 7, 2017, MTGLQ was assigned the mortgage.  (Am. Compl. ¶ 59.)  On May 23, 2018, Ras Boriskin LLC appeared as co-counsel for MTGLQ.  (*Id.* ¶ 61; *see* Notice of Appearance, annexed to

---

LLC] was identified as counsel for the plaintiff in the complaint, (d) within six years of the date of the filing of this action. Excluded from the [c]lass are the officers and directors of any Defendant, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant has or had a controlling interest, at all relevant times.

(Am. Compl. ¶ 112; *see id.* at 52.)

[5] The Court takes judicial notice of the documents filed in the state court actions.  *See Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, at *2 n.3 (2d Cir. May 7, 2025) (summary order) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024) (internal quotation marks omitted))); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998)) (same); *see also Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 754043, at *7 (S.D.N.Y. Mar. 10, 2025) ("[C]ourts may take judicial notice of public documents or matters of public record . . . including the contents of court dockets," but "a document filed in another court . . . [only] establish[es] the fact of such litigation and related filings" (first alteration in original) (citations omitted)); *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022) ("'Courts may take judicial notice of public documents and matters of public record,' including 'document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (alterations in original) (first quoting *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018); and then quoting *Glob. Network Commc'ns*, 458 F.3d at 157)).

Latzer Decl. as Ex. 2, Docket Entry No. 63-2.)  In August of 2018, a court-appointed referee submitted a referee's report of amount due which set forth the amounts due and owing on the mortgage to be $321,122.29.  (Am. Compl. ¶ 62.)  The referee's report of amount due included an affidavit from Selene Finance, which provided the figures the referee used to calculate the amount due to Selene Finance, including *inter alia* a principal balance of $258,223.56 and accrued interest of $33,591.85.  (*Id.*; Selene Fin. Aff. as to Caldero 6–10, annexed to Decl. of Margaret J. Cascino, Esq. in Supp. of MTGLQ's and Selene Fin.'s Mot. ("Cascino Decl.") as Ex. G, Docket Entry No. 48-7.)

Caldero alleges MTGLQ filed a notice of motion for judgment of foreclosure and sale in the Caldero State Court Action on August 8, 2018, with a proposed order drafted by Ras Boriskin LLC was "either identical or substantially similar" to the judgment of foreclosure and sale subsequently entered by the court.  (Am. Compl. ¶ 63.)  On March 28, 2019, the state court entered a judgment of foreclosure and sale for $321,122.29 due on the Caldero Subject Property. (*Id.* ¶ 64.)

On June 28, 2019, the Caldero Subject Property was sold to non-parties via public auction for $625,000.  (*Id.* ¶ 65.)  On August 2, 2019, the referee filed a report of sale for the Caldero State Court Action that utilized the final judgment amount awarded in the judgment of foreclosure and sale, $321,122.29, to compute the interest owed and awarded a total of $354,579.14 to MTGLQ, including interest.  (*Id.* ¶¶ 67–69, 70, 73; *see* Referee's Report of Sale, annexed to Latzer Decl. as Ex. 4, Docket Entry No. 63-4.)  Relevant figures from the referee's report of sale are: (1) $321,122.29, the "amount due per judgment"; (2) $11,065.62, the "[i]nterest thereon from 7/14/2018 to 3/28/2019 at 4.875%"; and (3) $9,976.68, the "[i]nterest

6

thereon from 3/29/2019 to 08/1/2019 at 9%."[6]  (Am. Compl. ¶ 68.)  The final judgment amount

of $321,122.29 in the referee's report of sale includes interest at the mortgage rate up until July

13, 2018, and it computes interest at the mortgage interest rate using the judgment amount as its

basis instead of the mortgage principal.  (*Id.* ¶¶ 70–71.)  Caldero alleges that MTGLQ and Ras

Boriskin LLC submitted a proposed order with improper calculations that "prematurely utilize

the final judgment amount to compute the pre-judgment interest accrued," and therefore awarded

MTGLQ a total of $354,579.14 instead of $352,571.70, Caldero's alleged correct total amount,

for a surplus of $2,007.44.  (*Id.* ¶¶ 71–73.)  The state court confirmed the referee's report of sale

on February 6, 2020.[7]  (Order Confirming Referee's Report of Sale, annexed to Cascino Decl. as

Ex. M, Docket Entry No. 48-13.)

## 2.    The Levien Subject Property

Levien had a mortgage on the Levien Subject Property.  (Am. Compl. ¶ 76.)  On May 20,

2013, Nationstar was assigned the mortgage.  (*Id.* ¶ 77.)  On July 31, 2015, Nationstar

commenced a foreclosure action, Index No. 708111/2015, against the Levien Subject Property in

the Supreme Court of the State of New York, Queens County (the "Levien State Court Action").

(*Id.* ¶ 78; Summons and Compl., annexed to Latzer Decl. as Ex. 7; Docket Entry No. 63-7.)  In

July of 2016, a court-appointed referee submitted a referee's report of amount due which set

forth the amounts due and owing on the mortgage to be $115,767.82.  (Am. Compl. ¶ 80.)

Referee's Oath of Computation, *Nationstar Mort. LLC v. Levien*, No. 708111/2015 (N.Y. Sup.

---

[6]  For clarity, the Court removed the all-caps formatting in the referee's reports of sale throughout this Memorandum and Order.

[7]  The Court notes that, on February 14, 2022, the state court filed a second order confirming the referee's report of sale.  (Order Confirming Referee's Report of Sale, annexed to Latzer Decl. as Ex. 6, Docket Entry No. 63-6.)  However, the referenced referee's report of sale in the February 14, 2022 confirmation order references a referee's report of sale filed in July of 2020, which was not discussed in the Complaint.

Ct. Sep. 13, 2022), Docket Entry No. 29.  Levien contends that the referee's report of amount due included an affidavit from Nationstar, which provided the figures the referee used to calculate the amount due to Nationstar, including *inter alia* a principal balance of $92,541.42 and outstanding interest of $18,469.16.  (*Id.*)  Aff., *Levien*, No. 708111/2015, Docket Entry No. 29.

Levien alleges Ras Boriskin LLC filed a notice of motion for judgment of foreclosure and sale in the Levien State Court Action on December 17, 2016, with a proposed order drafted by Ras Boriskin LLC that is "either identical or substantially similar" to the judgment of foreclosure and sale subsequently entered by the court.  (Am. Compl. ¶¶ 81–83.)  On September 29, 2017, the state court entered a judgment of foreclosure and sale for $115,767.82 due on the Levien Subject Property.  (*Id.* ¶ 83.)

On January 19, 2018, the Levien Subject Property was sold to a non-party via public auction for $320,000.  (*Id.* ¶ 84.)  On April 13, 2018, the referee filed a report of sale for the Levien State Court Action that utilized the final judgment amount awarded in the judgment of foreclosure and sale, $115,767.82, to compute the interest owed to Nationstar and awarded Nationstar a total of $145,202.90, including interest.[8]  (*Id.* ¶¶ 86–87, 92; Referee's Report of Sale.)  Relevant figures from the referee's report of sale are: (1) $115,767.82, the "amount due per judgment"; (2) $2,874.90, the "[i]nterest thereon from 6/15/[20]16 to 2/28/[20]17 at 3.5%"; (3) $2,702.97, the "[i]nterest thereon from 3/1/[20]17 to 9/29/[20]17 at 4%"; and (4) $4,996.25, the "[i]nterest thereon from 9/30/[20]17 to 3/23/[20]18 at 9%."  (Am. Compl. ¶ 87.)  The final judgment amount of $115,767.82 in the referee's report of sale includes interest at the mortgage

---

[8]  In the Amended Complaint, Plaintiffs indicate that the referee filed the referee's report of sale on March 23, 2019, (Am. Compl. ¶ 86), and later cite to a "fraudulent filing" dated March 23, 2018, (*id.* ¶ 147).  The referee's report of sale was signed on March 23, 2018 and filed in the Levien State Court Action on April 13, 2018.  *See* Referee's Report of Sale, *Nationstar Mort. LLC v. Levien*, No. 708111/2015 (N.Y. Sup. Ct. Apr. 13, 2018), Docket Entry No. 54.

rate up until June 23, 2016, and it computes interest at the mortgage interest rate using the judgment amount as its basis instead of the mortgage principal. (*Id.* ¶ 89.) Levien alleges that Nationstar and Ras Boriskin LLC submitted a proposed order with improper calculations that "prematurely utilize the final judgment amount to compute the pre-judgment interest accrued," and therefore awarded Nationstar a total of $145,202.90 instead of $144,206.06, Levien's alleged correct total amount, for a surplus of $996.84. (*Id.* ¶¶ 90–92.) The state court confirmed the referee's report of sale on September 13, 2022, and on October 30, 2023, the state court filed an amended order ordering the disbursements of funds.[9] (Am. Order Confirming Referee's Report of Sale, annexed to Latzer Decl. as Ex. 12, Docket Entry No. 63-12.)

### 3.    The Salty Subject Property

Salty had a mortgage on the Salty Subject Property. (Am. Compl. ¶ 95.) On August 20, 2014, Fannie Mae was assigned the mortgage. (*Id.* ¶ 96.) On March 27, 2015, Fannie Mae commenced a foreclosure action, Index No. 503568/2015, against Salty in the Supreme Court of

---

[9] The October of 2023 amended confirmation order does not affect the accrual date for the statutes of limitations. As discussed *infra* in Section II.d.i, Plaintiff's alleged injuries stem from the alleged miscalculations in the referee's reports of sale. As a result, Levien's injury occurred, at the latest, when the referee's report of sale was filed in April of 2018. The fact that the state court confirmed the April of 2018 referee's report of sale in a September of 2022 order and an October of 2023 amended order (filed to reflect that the New York State Comptroller's Office of Abandoned Funds had been served following the July of 2022 order and, accordingly, could then release the funds) is immaterial to the Court's analysis of the statute of limitations because Levien's injury had already occurred in April of 2018 (*i.e.*, when the referee filed the referee's report of sale). *See Edwards v. Ctr. Moriches Tchrs. Ass'n*, 553 F. App'x 68, 70 (2d Cir. 2014) ("[T]he mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought." (alteration in original) (quoting *FTC v. Minneapolis-Honeywell Regul. Co.*, 344 U.S. 206, 211 (1952))); *Hanley v. Deluxe Caterers of Shelter Rock, Inc.*, 175 F.3d 1007, 1007 (2d Cir. 1999) (summary order) ("Where a judgment is reentered, and the subsequent judgment does not alter the substantive rights affected by the first judgment, the time for appeal runs from the first judgment." (quoting *Farkas v. Rumore*, 101 F.3d 20, 22 (2d Cir.1996))); *Quintana v. Young Blooming, Inc.*, No. 12-CV-120, 2016 WL 1273231, at *4 (E.D.N.Y. Mar. 30, 2016) (collecting cases and stating that the limitations period ran from the date of the original judgment).

the State of New York, Kings County (the "Salty State Court Action"). (*Id.* ¶ 97; Summons and Compl., annexed to Latzer Decl. as Ex. 13, Docket Entry No. 63-13.) On March 27, 2015, Ras Boriskin LLC appeared as counsel for Fannie Mae. (Am. Compl. ¶ 98.) In June of 2017, a court-appointed referee submitted a referee's report of amount due which set forth the amounts due and owing on the mortgage to be $424,476.72. (*Id.* ¶ 100; Referee's Oath of Computation, annexed to Decl. of Robin L. Muir in Supp. of Nationstar's Mem. ("Muir Decl.") in Ex. 3 (Referee's Report of Amount Due) 1–2, Docket Entry No. 59-3.) Salty contends that the referee's report of amount due included an affidavit from Seterus, Inc.,[10] which provided the figures the referee used to calculate the amount due to Fannie Mae, including *inter alia* a principal balance of $365,429.20 and accrued interest of $50,174.83. (*Id.*; Dep., annexed to Muir Decl.in Ex. 3 (Referee's Report of Amount Due) 6–12.)

Salty alleges Fannie Mae filed a notice of motion for judgment of foreclosure and sale in the Salty State Court Action on June 22, 2017, with a proposed order drafted by Ras Boriskin LLC that is "either identical or substantially similar" to the judgment of foreclosure and sale subsequently entered by the court. (Am. Compl. ¶ 101.) On November 1, 2017, the state court entered a judgment of foreclosure and sale for $424,476.72 due on the Salty Subject Property. (*Id.* ¶ 102.)

On February 22, 2018, the Salty Subject Property was sold to a non-party via public auction for $550,000. (*Id.* ¶ 103.) On November 28, 2018, the referee filed a report of sale for the Salty State Court Action utilizing the final judgment amount awarded in the judgment of

---

[10] Salty states that "Seterus, Inc. was a mortgage servicing business which was acquired by Nationstar Mortgage in 2019." (Am. Compl. ¶ 100 n.7.) In its opposition, Nationstar argues that Salty cannot impose the liability of Seterus, Inc., the mortgage servicer on the Salty Subject Property "at all relevant times," onto Nationstar. (Nationstar's Mem. 32–33.) Because each claim against Nationstar is barred by the statutes of limitations, the Court does not address this argument.

foreclosure and sale, $424,476.72, to compute the interest owed to Nationstar and awarded Nationstar a total of $509,502.83, including interest. (*Id.* ¶¶ 105–06, 111.) Relevant figures from the referee's report of sale are: (1) $424,476.72, the "amount due . . . per judgment"; (2) $15,330.15, the "[i]nterest thereon from 1/21/[20]17 to 11/1/[20]17 at 4.625%"; and (3) $40,297.95, the "[i]nterest thereon from 11/2/[20]17 to 11/21/[20]18 at 9%." (*Id.* ¶ 106.) The final judgment amount of $424,476.72 in the referee's report of sale includes interest at the mortgage rate up until January 20, 2017, and it computes interest at the mortgage interest rate using the judgment amount as its basis instead of the mortgage principal. (*Id.* ¶ 108.) Salty alleges that Fannie Mae and Ras Boriskin LLC submitted a proposed order with improper calculations that "prematurely utilize the final judgment amount to compute the pre-judgment interest accrued," and therefore awarded Nationstar a total of $509,502.83 instead of $507,961.88, Salty's alleged correct total amount, for a surplus of $1,540.95. (*Id.* ¶¶ 109–11.) On March 12, 2022, the state court confirmed the referee's report of sale. (Order Confirming Referee's Report of Sale, annexed to Latzer Decl. as Ex. 12, Docket Entry No. 63-17.)

### ii.    FDCPA allegations

Plaintiffs contend that Defendants violated the FDCPA "by making false and misleading representations, using deceptive means and engaging in unfair and abusive practices," including: (1) filing "fraudulent and misleading" motions and documents in the state court actions against Plaintiffs containing interest calculations that illegally inflated the money due and owed to Defendants; (2) filing "fraudulent, deceptive and misleading" motions and referee's reports of sale containing interest calculations that illegally inflated the money due and owed to Defendants; and (3) collecting money "incidental to the principal obligations under mortgage loan agreements without being expressly authorized by the original mortgage loan agreement to do so." (Am. Compl. ¶ 124.)

11

### iii.    GBL § 349 allegations

Plaintiffs assert the same facts as their FDCPA claim to support their claim under GBL § 349.  (*Compare id.* ¶ 131 to *id.* ¶ 124.)  Plaintiffs allege "Defendants' acts and omissions are directed at consumers" and are "deceptive, misleading and fraudulent" including the acts of (1) filing "fraudulent and misleading" motions and documents in the state court actions containing interest calculations that illegally inflated the money due and owed to Defendants, and (2) filing "fraudulent, deceptive and misleading" motions and referees' reports of sale containing interest calculations that illegally inflated the money due and owed to Defendants.  (*Id.* ¶¶ 131–32.)

### iv.    The RICO allegations

Plaintiffs first allege that Defendants were a RICO enterprise, the purpose of which was to "secure judgments of foreclosure and sale through fraudulent means and to use those judgments to extract money" from Plaintiffs.  (*Id.* ¶¶ 140–44.)  Second, Plaintiffs allege that Defendants engaged in a pattern of racketeering activity to "defraud and obtain money or property by means of false or fraudulent pretenses and representations" by: (i) "[p]roducing and filing fraudulent motions for a judgment of foreclosure and sale;" (ii) "[p]roducing and filing fraudulent [r]eferee [r]eports of [s]ale;" (iii) "[u]sing fraudulent, deceptive and misleading [r]eferee [r]eports of [s]ale to obtain [j]udgments of [f]oreclosure and [s]ale against Plaintiffs and [c]lass members under false pretenses;" and (iv) "[u]sing fraudulently obtained judgments of foreclosure and sale to steal surplus monies from Plaintiffs and [c]lass members."  (*Id.* ¶ 146.)  In furtherance of this goal, Plaintiffs allege that the Defendants filed false filings in the state court actions on December 17, 2016, September 29, 2017, March 23, 2018, August 2, 2019, and

12

August 8, 2019,[11] "falsely claiming that [MTGLQ], Fannie Mae and Nationstar Mortgage are entitled to illegally computed compound interest." (*Id.* ¶ 147.)  Plaintiffs allege that Defendants have used these "deceptive court filings with every [judgment of foreclosure and sale] that they have fraudulently obtained" to further the fraudulent scheme and take money and property from Plaintiffs "by reasons of false pretenses and representations." (*Id.* ¶ 149.)  In addition, Plaintiffs allege that Defendants engaged in racketeering activity by "us[ing] wires and the mail to receive the unlawfully obtained monies," constituting wire fraud as defined by 18 U.S.C. § 1343.  (*Id.* ¶ 150.)  Plaintiffs allege that, as a result, they have been "deprived of due process and [ ] had foreclosure and sale judgments entered against them which have been used to extract money from them by selling their property." (*Id.* ¶ 158.)

### v.   Judiciary Law § 487 allegations

To support their claim under Judiciary Law § 487 against Ras Boriskin LLC, Plaintiffs assert the same allegations as their FDCPA and GBL § 349 claims, but also allege Ras Boriskin LLC acted with the "intent to deceive consumers and multiple New York courts." (*Id.* ¶ 135; *compare id*. ¶ 135 with *id.* ¶¶ 124, 131.)

### vi.   Negligence, gross negligence and legal malpractice allegations

Plaintiffs assert negligence, gross negligence, and legal malpractice claims against Ras Boriskin LLC premised on the same underlying allegations.  (*See id.* ¶¶ 170–89.)  For their negligence claim, Plaintiffs allege Ras Boriskin LLC "instructs its attorneys and employees to calculate interest with the fraudulent method" and "use proposed orders and referee reports of sale with a miscalculated judgment amount." (*Id.* ¶¶ 173–74.)  For their gross negligence claim,

---

[11]  The Court notes that August 8, 2019 is not mentioned elsewhere in the Amended Complaint and is only mentioned once in Plaintiffs' opposition.  (*See* Pls.' Opp'n 33).  The Court is not aware of any filing dated August 8, 2019.

Plaintiffs allege Ras Boriskin LLC's "failure to follow the basic and necessary protocol for the calculations in the referee reports of sale manifested a reckless and intentional breach of its duty of care and a complete disregard for the rights of Plaintiffs." (*Id.* ¶ 182.) For their legal malpractice claim, Plaintiffs allege Ras Boriskin LLC "negligently and recklessly filed fraudulent referee reports of sale on behalf of [MTGLQ] and Selene Financ[e]." (*Id.* ¶ 186.) In addition, Plaintiffs allege that Ras Boriskin LLC "failed to take available basic and necessary steps to properly report sales of the foreclosed properties, resulting in sales that are lower in price than the bid amount at auction." (*Id.* ¶¶ 176, 183, 187.)

### vii.   Unjust enrichment, *prima facie* tort, and conversion allegations

Plaintiffs assert unjust enrichment, *prima facie* tort, and conversion claims for their loss of surplus money. (*See id.* ¶¶ 190–206.) Plaintiffs assert an unjust enrichment claim against MTGLQ, Nationstar, and Fannie Mae for receiving $2,007.44, $996.84, and $1,540.95, respectively, more than they were legally entitled to collect "through Defendants['] fraudulent interest calculations." (*Id.* ¶ 191.) Plaintiffs assert a *prima facie* tort claim against Defendants for "intentionally [seeking] to reduce and/or eliminate the surplus monies rightfully owed to Plaintiffs." (*Id.* ¶ 196.) Plaintiffs also assert a conversion claim against Defendants for "intentionally, and without authority, assum[ing] or exercis[ing] control over the surplus monies from the foreclosure auction and sale of the [subject properties]," thus "interfer[ing] with Plaintiffs' possessory right and vested interest in the surplus funds from the sale." (*Id.* ¶¶ 203–04.)

## II.   Discussion

### a.   Standard of review

A district court may dismiss an action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or

constitutional power to adjudicate it." *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, N.Y.*, 98 F.4th 386, 391 (2d Cir. 2024) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021)); *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015)), *cert. denied*, 144 S. Ct. 1095 (2024); *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (quoting *Makarova*, 201 F.3d at 113). Courts must "accept the complaint's material allegations as true, and . . . draw all reasonable inferences in the plaintiffs' favor," *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024) (quoting *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017)), but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings," *Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, 73 F.4th 126, 136 (2d Cir. 2023) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) ("It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" (first quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); and then citing *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999))); *see Iacovo v. Magguilli*, No. 24-CV-4372, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." (quoting *Tandon*, 752 F.3d at 243)). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d

15

at 243 (quoting *Makarova*, 201 F.3d at 113); *AMTAX Holdings*, 136 F.4th at 37 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (quoting *Makarova*, 201 F.3d at 113)).

      **b.    The Court has subject matter jurisdiction because this action is not barred by the *Rooker-Feldman* doctrine**

Defendants argue that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine because Plaintiffs improperly attempt to relitigate a final state court judgment. (MTGLQ's and Selene Fin.'s Mem. 10–13; Nationstar's Mem. 8–12; Fannie Mae's Mem. 6–10; Ras Boriskin LLC's Mem. 14–19.) First, Defendants argue that Plaintiffs' claims are barred because their alleged injuries arise from the judgments of foreclosure and sale, which is a state court judgment. (MTGLQ's and Selene Fin.'s Mem. 12; Nationstar's Mem. 9; Fannie Mae's Mem. 7–8; Ras Boriskin LLC's Mem. 14–16.) Second, Defendants argue that Plaintiffs' claims are barred because they require the Court to review the state court's determinations of the calculations authorized in the judgments of foreclosure and sale. (MTGLQ's and Selene Fin.'s Mem. 12; Nationstar's Mem. 11–12; Fannie Mae's Mem. 8–10; Ras Boriskin LLC's Mem. 16–18.)

Plaintiffs argue that all of their claims are "wholly independent" of the judgments of foreclosure and sale and do not seek to overturn them.[12] (Pls.' Opp'n 2.) First, Plaintiffs argue that the second prong of the *Rooker-Feldman* doctrine is not met because there is no causal link between the judgments of foreclosure and sale and Plaintiffs' injury since Plaintiffs' injuries were "merely ratified by the [state] court" rather than caused by it. (*Id.* at 3; *see id.* 2–6.) In support, Plaintiffs allege the unlawfully computed interest occurred during the post-auction stage

---

    [12] The Court notes that Plaintiffs' opposition brief refers to a plaintiff by the name of "Athill," who is the plaintiff in *Bidar v. Eckert* (25-CV-1828), a related case before the Court filed by Plaintiffs' counsel. (*See generally* Pls.' Opp'n.) In addition, Plaintiffs' opposition brief refers to "Plaintiff" (singular) when referring to the claims made by all Plaintiffs. (*Id.*)

of the litigation with "little to no judicial oversight." (*Id.* at 3–4.)  Second, Plaintiffs contend that their injuries were caused by the "fraudulent calculations of interest in the final stages of foreclosure proceedings — not the underlying [judgments of foreclosure and sale]" that were then "ratified by the court without any contemporaneous judicial review." (*Id.* at 4.)  Third, Plaintiffs argue that the Court can consider Plaintiffs' claims without assessing the validity of the judgments of foreclosure and sale, and damages for fraud are not barred by *Rooker-Feldman*. (*Id.* at 7–8.)  Fourth, Plaintiffs argue the relief sought would neither invalidate the judgments of foreclosure and sale, nor do Plaintiffs "seek a judgment overturning, invalidating, or vacating the underlying state court judgments." (*Id.* at 5.)

In *Rooker*, 263 U.S. 413, 415–16, and *Feldman*, 460 U.S. 462, 482–84, the Supreme Court held that federal district courts lack subject matter jurisdiction over disputes where a plaintiff essentially seeks review of a state court decision. *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482–84 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923) (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005) (holding that *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments"); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) ("Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." (citing *Exxon Mobil Corp.*, 544 U.S. at 283–84)).  "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005);

17

*see also Vossbrinck*, 773 F.3d at 426 ("The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court.'" (alteration in original) (quoting *Exxon Mobil Corp.*, 544 U.S. at 283)).

In order for the *Rooker-Feldman* doctrine to apply, the following four-part test must be satisfied: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by a state court judgment'; (3) the plaintiff 'invite[s] . . . review and rejection of that judgment'; and (4) the state judgment was 'rendered before the district court proceedings commenced.'" *Vossbrinck*, 773 F.3d at 426 (alterations in original) (quoting *Hoblock*, 422 F.3d at 85); *see also Binder v. Cap. One Bank, N.A.*, No. 25-1201, 2025 WL 3751871, at *1 (2d Cir. Dec. 29, 2025) (summary order) (affirming *Rooker-Feldman* doctrine barred appellant's claims because it required the court to "review and reject[]" the state court's determination (quoting *Vossbrinck*, 773 F.3d at 426)); *Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 612 (2d Cir. 2020) (affirming that review was barred pursuant to the *Rooker-Feldman* doctrine because "correcting [the] loan balance as found by the state court" in the foreclosure judgment would invite rejection of the state court's judgment); *Wilson v. HSBC Bank, USA*, 834 F. App'x 607, 609 (2d Cir. 2020) (outlining the *Rooker-Feldman* test); *Ahchouch v. Lakeview Loan Servicing, LLC*, No. 25-CV-93, 2025 WL 70136, at *2 (S.D.N.Y. Jan. 10, 2025) ("[C]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." (alteration in original) (quoting *Brooks v. Aiden 0821 Cap. LLC*, No. 19-CV-6823, 2020 WL 4614323, at *3 (E.D.N.Y. July 22, 2020))); *In re Ditech Holding Corp.*, No. 19-BR-10412, 2022 WL 1750997, at *12 (Bankr. S.D.N.Y. May 28, 2022) (dismissing claims because "the [c]ourt would be required to look behind the judgment and determine whether the . . . [s]tate [c]ourt [f]oreclosure [j]udgment is the product of alleged fraud"); *In re Allard*, No. 18-BR-14092, 2019 WL 4593854, at *3 n.2 (Bankr. S.D.N.Y. Sep. 20, 2019) (noting

18

that a debtor "tried unsuccessfully several times to get th[e] [c]ourt . . . to modify the state court foreclosure judgment, reducing the interest award . . . [b]ut the *Rooker-Feldman* doctrine does not permit th[e] [c]ourt to do so"); *In re Moise*, 575 B.R. 191, 202 (Bankr. E.D.N.Y. 2017) (dismissing adversary complaint under the *Rooker-Feldman* doctrine seeking to reverse the state court foreclosure judgment).

"Although 'all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar . . . the second requirement — that the plaintiff complains of an injury caused by a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive.'" *Dorce v. City of New York*, 2 F.4th 82, 101–02 (2d Cir. 2021) (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)). The Second Circuit has acknowledged that plaintiffs may "purport to complain of injury by individuals in reality complain of injury by state-court judgments," and therefore the Circuit "developed the following formula to help guide our inquiry: 'a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Sung Cho*, 910 F.3d at 646 (quoting *Hoblock*, 422 F.3d at 88).

Plaintiffs' claims are not barred by the *Rooker-Feldman* doctrine because (1) Plaintiffs' injuries were not caused by the state court judgments, and (2) Plaintiffs' requests for relief do not seek to set aside the judgments of foreclosure and sale or the confirmation orders, and therefore, the second and third prongs of *Rooker-Feldman* are not met. *See Dorce*, 2 F.4th at 104 (finding plaintiffs' claims were not barred by *Rooker-Feldman* because plaintiffs only sought damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment).

19

As an initial matter, the first and fourth *Rooker-Feldman* prongs are met: the federal-court Plaintiffs lost in the state court, and the state court must have rendered judgment before the issue is brought before the federal court.[13] First, Plaintiffs lost in the state court actions resulting in the judgments of foreclosure and sale and confirmation orders. *See id.* at 103 (finding the first prong satisfied by a "property owner who loses his or her interest in the property through an *in rem* foreclosure proceeding in state court"). Second, Plaintiffs filed this action on April 3, 2025, between approximately seven and nine years after the judgments of foreclosure and sale and between approximately three and six years after the confirmation orders were filed and entered in the state court actions. *See id.* at 102 (finding state court foreclosure judgments rendered prior to commencement of the federal action satisfied the fourth prong).

However, regarding the second factor, because Plaintiffs' injuries were not caused by the state court judgments, but instead, Defendants' alleged fraud and as to the third factor, the asserted claims do not invite federal review and rejection of the judgments of foreclosure and sale and the confirmation orders. Accordingly, Plaintiffs' requests for relief do not seek to set aside the judgments of foreclosure and sale and the confirmation orders, and as a result, the second and third *Rooker-Feldman* prongs are not satisfied. *See id.* at 104 (permitting claims for compensatory damages for injury caused by the defendant's misconduct in procuring a state court judgment); *Lindow v. Argent Mortg. Co.*, No. 23-CV-8860, 2024 WL 4665181, at *6 (E.D.N.Y. Nov. 4, 2024) ("[T]he second and third *Rooker-Feldman* requirements are not met when a plaintiff alleges that fraud occurred during a foreclosure proceeding and seeks damages for his injuries." (quoting *Limtung v. Thomas*, No. 19-CV-3646, 2021 WL 4443710, at *5 (E.D.N.Y. Sep. 28, 2021))).

---

[13] Plaintiffs do not dispute the first and fourth prongs are met. (*See* Pls.' Opp'n 2–8 (discussing only the second and third prongs).)

Each of Plaintiffs' claims request damages without inviting the Court to overturn the judgments of foreclosure and sale and the confirmation orders.  *See Dorce*, 2 F.4th at 104 ("[The Second Circuit] has concluded that *Rooker-Feldman* does not bar plaintiffs from seeking compensatory damages for misconduct 'that defendants pursued in obtaining' state court judgments." (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015))); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) ("The *Rooker-Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment."); *Sykes*, 780 F.3d at 94–95 (noting that "claims . . . speak[ing] not to the propriety of the state court judgments, but to the fraudulent course of conduct that [the] defendants pursued in obtaining such judgments" are not barred by *Rooker-Feldman*); *see also Vossbrinck*, 773 F.3d at 427–28 (finding the plaintiff's request for the court to grant him title to his property was barred by *Rooker-Feldman* but the plaintiff's requests for damages suffered from the defendants alleged fraud was not barred by *Rooker-Feldman* because the reviewing federal court was not required to review the state court judgment).

Plaintiffs allege Defendants knowingly presented deceptive and fraudulent filings with inflated interest amounts in the state court actions, (Am. Compl. ¶¶ 73, 92, 111, 124, 131, 135, 146–47), and the state court "merely ratified" Defendants' conduct."  (Pls.' Opp'n 3.)  Plaintiffs' allegations "can be liberally construed as asserting fraud claims that are not barred by *Rooker-Feldman* — because they seek damages from Defendants for injuries [plaintiff] suffered from their alleged fraud."  *See Vossbrinck*, 773 F.3d at 427; *Lindow*, 2024 WL 4665181, at *6 ("Liberally construed, the plaintiff's complaint reaches beyond the attack on the state court judgment and may be read as a claim for damages stemming from the defendants' allegedly

21

fraudulent conduct in connection with the foreclosure proceeding.  Specifically, the plaintiff claims that the defendants 'knowingly presented false information' in order to secure the foreclosure judgment.").

Plaintiffs do not seek injunctive or declaratory relief concerning Defendants' interest in the subject properties, only damages, and therefore, *Rooker-Feldman* does not bar Plaintiffs' claims.  *Cf. Barlow v. Nationstar Mortg. LLC*, No. 21-1483, 2022 WL 950949, at *2 (2d Cir. Mar. 30, 2022) (summary order) (finding that plaintiff's requests for a temporary and permanent injunction against foreclosure "activity" and an "accounting" of his loan payments were barred by *Rooker-Feldman* because the plaintiff's alleged injuries of extreme emotional distress, slander and lost equity were based on the state court foreclosure judgment and the amount the state court determined he owed on his mortgage); *Vossbrinck*, 773 F.3d at 427 (finding *Rooker-Feldman* barred the plaintiff's requests for title and tender of his property); *Lindow*, 2024 WL 4665181, at *5 (concluding the court lacked jurisdiction over each claim for injunctive or declaratory relief concerning the plaintiff's and the defendants' interest in the property).

### c.   Plaintiffs are not judicially estopped from asserting their claims

Defendants argue that Plaintiffs are judicially estopped from asserting their claims.  (*See* MTGLQ's and Selene Fin.'s Mem. 15–17; Fannie Mae's Mem. 13–14.)  First, MTGLQ and Selene Finance contend that Caldero "affirmatively" filed the motion to confirm and "explicitly requested" the state court to confirm the referee's report of sale and distribute the surplus funds. (MTGLQ's and Selene Fin.'s Mem. 16.)  In support, MTGLQ and Selene Finance contend that permitting Caldero to proceed with his claims would "unfairly advantage Caldero to the detriment of Defendants."  (*Id.*)  Second, Fannie Mae argues that judicial estoppel bars Salty's claims because Salty accepted the accuracy of the calculations by moving to confirm the referee's report of sale and to distribute the surplus funds. (Fannie Mae's Mem. 14.)  In support,

22

Fannie Mae contends that Salty's current position is "clearly inconsistent" with her prior position (*i.e.*, confirming the calculations), and allowing Salty to proceed with her claims would "unfairly prejudice" Fannie Mae and "undermine the state court's foreclosure process." (*Id.*)

Plaintiffs state that this action is not barred by judicial estoppel but fail to make an argument in support of their statement. (Pls.' Opp'n 8; *see generally* Pls.' Opp'n.)

Judicial estoppel is a doctrine that may be invoked by a court in its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (noting that judicial estoppel is an equitable doctrine invoked in the court's discretion); *Quinn v. City of New York*, No. 22-709, 2023 WL 3909798, at *2 (2d Cir. June 9, 2023) (summary order) (same). The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 255 (2d Cir. 2020) (citation omitted); *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 271–72 (2d Cir. 2019) ("The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004))); *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) ("Judicial estoppel 'prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding.'" (alteration in original) (quoting *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993))). "Judicial estoppel is properly invoked where: (1) a party's later position is clearly inconsistent with its earlier position," "(2) the party's former position has been adopted in some way by the court in an earlier proceeding," *Ashmore*, 923 F.3d at 272 (quoting *New Hampshire*, 532 U.S. at 750–51), and (3) "the particular factual circumstances of a case 'tip the balance of equities in favor' of" judicially estopping a litigant, *Clark v. All Acquisition, LLC*, 886 F.3d 261, 266–67 (2d Cir.

23

2018) (quoting *New Hampshire*, 532 U.S. at 751).  The balance of equities may tip in favor of estoppel if the "prior inconsistent position" would "g[i]ve the party to be estopped an 'unfair advantage' over the party seeking estoppel."  *Id.* (quoting *BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC*, 859 F.3d 188, 192 (2d Cir. 2017)); *see also Grajeda v. Vail Resorts Inc.*, No. 24-1592, 2025 WL 1539713, at *1 (2d Cir. May 30, 2025) (summary order) (explaining that courts consider "whether the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped" (citation omitted)).  Thus, there is a "general requirement that a party seeking estoppel have suffered prejudice."  *Clark*, 886 F.3d at 267; *see also Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) ("[I]n evaluating whether to apply the doctrine of judicial estoppel, courts generally look for the existence of three factors: (1) that a party's new position is 'clearly inconsistent' with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" (quoting *New Hampshire*, 532 U.S. at 750–51)).  Judicial estoppel typically only applies to inconsistent factual positions, not to issues of law.  *See Ashmore*, 923 F.3d at 271–72 ("The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." (quoting *Rodal*, 369 F.3d at 118)); *see also Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999) (noting that the majority of cases applying judicial estoppel involved purely factual contradictions); *cf. In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 599–600 (Bankr. S.D.N.Y. 2017) ("Judicial estoppel applies to inconsistent factual positions, not alternative legal theories of the case.").

The Court declines to exercise its discretion to prevent Plaintiffs from challenging Defendants' fraudulent interest calculations.  While Plaintiffs moved to confirm the referee's

reports of sale, their position in the state court actions is not a "true inconsistency" with their current allegations that Defendants' engaged in a "fraudulent scheme." *See United States v. Helm*, 58 F.4th 75, 87 (2d Cir. 2023) ("[T]here must be a true inconsistency between the statements in the two proceedings. If the statements can be reconciled there is no occasion to apply an estoppel." (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72–73 (2d Cir. 1997))). In this proceeding, Plaintiffs complain of "different facts," (Pls.' Opp'n 10), involving "systematic fraud and theft," (Am. Compl. ¶ 10), in contrast to the state court actions, which was based on whether Plaintiffs "borrowed money from lenders and failed to pay it back," (Pls.' Opp'n 10). Because Plaintiffs are not challenging the state court actions and the judgments of foreclosure of sale in the state court actions, the Court declines to exercise its discretion to prevent Plaintiffs from challenging the Defendants' conduct in the state court actions. *See Frost*, 980 F.3d at 255 (stating judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding" (internal citation omitted)); *Ashmore*, 923 F.3d at 272, 275 (explaining that judicial estoppel may be invoked where "a party's later position is clearly inconsistent with its earlier position"); *see also Helm*, 58 F.4th at 87 (finding that there was no inconsistency between the government's arguments where the government "temporarily accepted [the defendant's] admission to support the factual basis for [his] guilty plea" but "expressly reserved the right" to raise additional relevant conduct at sentencing).

### d. All of Plaintiffs' claims are time-barred and equitable tolling does not apply

The Court considers the parties' arguments regarding statutes of limitations and equitable tolling and finds that all of Plaintiffs' claims are time-barred, and equitable tolling is inapplicable.

25

### i.   The statute of limitations for each claim has expired

Defendants move to dismiss all of Plaintiffs' claims on the grounds that the statutes of limitations have expired because their claims accrued, at the latest, when the state courts entered the judgments of foreclosure and sale.  (MTGLQ's and Selene Fin.'s Mem. 17–21; Nationstar's Mem. 15–20; Fannie Mae's Mem. 16–20; Ras Boriskin LLC's Mem. 10–13.)  MTGLQ and Selene Finance argue that Caldero's claims accrued as early as August of 2018, when MTGLQ served the judgment of foreclosure and sale which included the sought-after prejudgment interest, and no later than March of 2019, when the state court entered the judgment of foreclosure and sale.  (MTGLQ's and Selene Fin.'s Mem. 17; *see also* Nationstar's Mem. 15 (also arguing that Caldero's claims accrued in March of 2019); Ras Boriskin LLC's Mem. 10–11 (same).)  Nationstar argues that Levien's claims accrued in September of 2017, when the state court entered the judgment of foreclosure and sale.  (Nationstar's Mem. 15; *see also* Ras Boriskin LLC's Mem. 11 (also arguing that Levien's claims accrued in September of 2017).)  Fannie Mae argues that Salty's claims accrued in November of 2017, when the state court entered the judgment of foreclosure and sale.  (Fannie Mae's Mem. 16; *see also* Nationstar's Mem. 15 (also arguing that Salty's claims accrued in November of 2017); Ras Boriskin LLC's Mem. 11 (same).)

Plaintiffs argue that their claims accrued "upon the filing of the [r]eports of [s]ale in the [state court] foreclosure actions."  (Pls.' Opp'n 15.)  In their opposition papers, Plaintiffs contend that Caldero's claims accrued in August of 2019, Levien's claims accrued in April of 2018, and Salty's claims accrued in November of 2018.  (*Id.*)  In addition, Plaintiffs argue that the claim pursuant to Judiciary Law § 487 is timely under its six-year statute of limitations,[14] (*id.*), and the

---

[14]  The Court notes that Plaintiffs only refer to Caldero's Judiciary Law § 487 claim as having a six-year statute of limitations, even though all Plaintiffs bring a Judiciary Law § 487

remaining claims are timely under the doctrines of fraudulent concealment and equitable tolling. (*Id.* at 16.)

Claims under the FDCPA must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019) ("[A]n FDCPA claim must be brought 'within one year from the date on which the violation occurs.'" (quoting *id.*)). "An FDCPA violation occurs 'when an individual is injured by the alleged unlawful conduct.'" *Makhnevich v. Novick Edelstein Pomerantz PC*, No. 23-202, 2024 WL 2207061, at *1 (2d Cir. May 16, 2024) (summary order) (quoting *Benzemann*, 924 F.3d at 83).

A GBL § 349 claim must be brought within three years from the date on which the plaintiff was first injured by the allegedly deceptive act or practice. *In re Columbia Coll. Rankings Action*, No. 22-CV-5945, 2024 WL 1312511, at *10 (S.D.N.Y. Mar. 26, 2024) (stating GBL § 349 claims "must be commenced within three years of the date of accrual, which occurs when the plaintiff is injured by the deceptive act or practice that violated the statute" (quoting *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 699 (S.D.N.Y. 2019))); *see also Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 149 n.8 (S.D.N.Y. 2014) (holding the three-year statute of limitations barred the plaintiffs' GBL § 349 claims when the plaintiffs alleged fraud-based conduct (first citing *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 334 n.7 (S.D.N.Y. 2000); and then citing N.Y. C.P.L.R. § 214(2))).

A civil RICO claim must be brought within four years of accrual, which occurs "when the plaintiff discovers or should have discovered the RICO injury." *Cohen v. S.A.C. Trading*

---

claim. (Pls.' Opp'n 15 ("Plaintiff Caldero's Complaint was filed well within the six year statute of limitations for a Judiciary Law § 487 claim."); *see* Am Compl. ¶¶ 133–36.)

*Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (first quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998); and then citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

Claims of negligence and gross negligence must be brought within three years from the date of accrual, which is the date of the injury. *See Shukla v. Meta Platforms Inc.*, No. 23-CV-10150, 2024 WL 4108563, at *13 (S.D.N.Y. July 17, 2024) (finding the plaintiff's negligence claim was time-barred as construed under either N.Y. C.P.L.R. § 214(4) for injury to property or N.Y. C.P.L.R. § 214(5) for personal injury because both had three-year statutes of limitations (first quoting *Vaccaro v. Bank of Am., N.A.*, No. 13-CV-2484, 2016 WL 4926201, at *6 n.12 (S.D.N.Y. Sep. 15, 2016); and then citing N.Y. C.P.L.R. § 214)), *report and recommendation adopted*, 2024 WL 3634796 (S.D.N.Y. Aug. 2, 2024), *reconsideration denied sub nom.*, *Shukla v. Deloitte Consulting LLP*, 2024 WL 5162062 (S.D.N.Y. Oct. 28, 2024), *appeal dismissed*, No. 24-3126 (2d Cir. Jan. 14, 2025); *Spinnato v. Unity of Omaha Life Ins.*, 322 F. Supp. 3d 377, 391–92 (E.D.N.Y. 2018) (applying three-year statute of limitations for negligence and gross negligence claims).

A cause of action for legal malpractice must be brought within three years from the time of accrual. *Campbell v. L. Off. of Solomon Rosengarten*, 238 N.Y.S.3d 679, 680 (App. Div. 2025) (citing N.Y. C.P.L.R. §§ 203(a), 214(6)). An action to recover damages for attorney deceit under Judiciary Law § 487 may be subject to a six-year statute of limitations. *Catsiapis v. Pardalis & Nohavicka, LLP*, 194 N.Y.S.3d 522, 523 (App. Div. 2023) (first citing N.Y. C.P.L.R. § 213(1) (providing a six-year statute of limitations for "an action for which no limitation is specifically prescribed by law"); and then citing *Melcher v. Greenberg Traurig, LLP*, 23 N.Y.3d 10, 15 (2014)); *see Melcher*, 23 N.Y.3d at 15 (finding claims for attorney deceit are subject to the six-year statute of limitations under N.Y. C.P.L.R. § 213(1)). However, "[t]he statute of limitations for a cause of action alleging legal malpractice, and a cause of action alleging a

28

violation of Judiciary Law § 487 arising out of the same transactions as the legal malpractice cause of action, is three years." *Pergament v. Gov't Emps. Ins.*, --- N.Y.S.3d ---, ---, 2026 WL 157439, at *2 (App. Div. Jan. 21, 2026) (first quoting *Fraumeni v. L. Firm of Jonathan D'Agostino, P.C.*, 187 N.Y.S.3d 99, 101 (App. Div. 2023); then citing N.Y. C.P.L.R. § 214(6); and then citing *Farage v. Ehrenberg*, 996 N.Y.S.2d 646 (App. Div. 2014)); *see Catsiapis*, 194 N.Y.S.3d at 523 (dismissing Judiciary Law § 487 as barred by three-year statute of limitations because the claim was "premised on the same facts as the legal malpractice cause of action and [did] not allege distinct damages") (citations omitted)); *Farage*, 996 N.Y.S.2d at 651–52, 655 (distinguishing *Melcher*, 23 N.Y.3d 10, because it did not involve a claim of legal malpractice and finding N.Y. C.P.L.R. § 214(6) governed any claims of legal malpractice, including Judiciary Law § 487, with a three-year statute of limitations); *see also* N.Y. C.P.L.R. § 214(6) (providing a three-year statute of limitations to recover damages for "malpractice, other than medical, dental or podiatric malpractice").

The statute of limitations for claims of unjust enrichment vary depending on the nature of the claim and the relief sought: unjust enrichment claims seeking monetary damages have a three-year statute of limitations.[15] *St. Martinus Univ., N.V. v. SMU LLC*, No. 21-CV-1888, 2023

---

[15] Unjust enrichment is not explicitly named in the New York statutes of limitations, and courts in the Second Circuit have cited to different New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") statutes for unjust enrichment claims based on the underlying theory, accompanying causes of action, and type of relief sought. *See Nwoye v. Obama*, No. 22-CV-1791, 2023 WL 4631712, at *14 (S.D.N.Y. July 20, 2023) (discussing six-year statute of limitations period for unjust enrichment claim under N.Y. C.P.L.R. § 213(2) for breach of contract claims (citing *Seidenfeld v. Zaltz*, 80 N.Y.S.3d 311, 311 (App. Div. 2018))), *report and recommendation adopted*, 2023 WL 5164156 (S.D.N.Y. Aug. 11, 2023), *aff'd*, No. 23-1178, 2024 WL 911753 (2d Cir. Mar. 4, 2024) (summary order); *see also Oppedisano v. Zur*, No. 24-2955, 2025 WL 2682227, at *2 (2d Cir. Sep. 19, 2025) (summary order) (applying catchall six-year limitations period in N.Y. C.P.L.R. § 213(1) for actions that do not otherwise have a specific limitations period proscribed by statute); *Yeend v. Akima Glob. Servs., LLC*, No. 20-CV-1281, 2025 WL 959968, at *18 (N.D.N.Y. Mar. 31, 2025) ("Courts within the Second Circuit apply a three-year or six-year statute of limitations to unjust enrichment claims depending on the

WL 2969284, at *12 (E.D.N.Y. Mar. 9, 2023); *Bilalov v. Gref*, No. 20-CV-9153, 2022 WL 4225968, at *10 (S.D.N.Y. Sep. 13, 2022) (applying three-year statute of limitations to unjust enrichment claim for "wrongful taking of [ ] shares" and applying six-year statute of limitations to claims for fraud and conspiracy to commit fraud for the same underlying conduct); *Lia v. Saporito*, 909 F. Supp. 2d 149, 167 (E.D.N.Y. 2012) (explaining unjust enrichment claims seeking monetary damages are governed by the three-year statute of limitations under N.Y. C.P.L.R. § 214(3)), *aff'd*, 541 F. App'x 71 (2d Cir. 2013); *but see St. Martinus Univ.*, 2023 WL 2969284, at *12 (describing a split among the intermediate New York appellate courts under what circumstances to apply the three-year or six-year statute of limitations period to an unjust enrichment claim (citing *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 64–66 (S.D.N.Y. 2020))).

Claims for conversion must be brought within three years from the occurrence of the conversion or the unjust act. *Su v. Hwang*, No. 24-653, 2025 WL 1983182, at *4 (2d Cir. July 17, 2025) (summary order) (citing N.Y. C.P.L.R. § 214(3)); *Bilalov*, 2022 WL 4225968, at *10 (first citing N.Y. C.P.L.R. § 214(3); and then citing *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 3240428, at *11 (S.D.N.Y. Aug. 7, 2012)).

A cause of action for *prima facie* tort must be brought within three years from the date of injury if the plaintiff seeks damages for economic loss. *Watkins v. Town of Webster*, 592 F.

---

substantive remedy sought by the plaintiff. If monetary relief is sought, a three-year statute of limitations applies. If an equitable remedy is sought, a six-year statute of limitations applies." (citing *Bascuñan v. Elsaca*, No. 15-CV-2009, 2021 WL 3540315, at *6, 6 n.5 (S.D.N.Y. Aug. 11, 2021))), *appeal docketed*, No. 25-2209 (2d Cir. Sep. 15, 2025); *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 65 (S.D.N.Y. 2020) (discussing split among New York's intermediate appellate courts with the Second Department applying a three-year statute of limitations for unjust enrichment claims under N.Y. C.P.L.R. § 214(3) when a plaintiff seeks monetary relief and a six-year limitations period when a plaintiff seeks equitable relief under N.Y. C.P.L.R. §§ 213(1)–(2), and the First Department emphasizing the "nature of the claim" and applying a six-year limitations period when a claim for unjust enrichment rests on facts that also support another claim governed by a six-year statute of limitations, even when the plaintiff seeks damages).

Supp. 3d 96, 129–30 (W.D.N.Y. 2022) (first citing *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 75–76 (S.D.N.Y. 1995); and then citing N.Y. C.P.L.R. § 214).

Plaintiffs' alleged injuries stem from the miscalculations in the referee's reports of sale for the state court actions, which were filed in August of 2019 (Caldero), April of 2018 (Levien), and November of 2018 (Salty).[16]  As a result, Plaintiffs' claims began accruing, at the latest, in August of 2019, which is more than five years before Plaintiffs commenced this action. Moreover, Plaintiffs incorrectly allege that their the Judiciary Law § 487 claim is timely pursuant to the six-year statute of limitations because the six-year statute of limitations is reduced to three years when a plaintiff (1) pleads the same facts as his/her legal malpractice claim and (2) does not allege distinct damages, as is the case before the Court.  *See Catsiapis*, 194 N.Y.S.3d at 523 (finding a three-year statute of limitations applied to the plaintiff's Judiciary Law § 487 claim because it pled the same facts as the legal malpractice claim and did not allege distinct damages). In addition, Plaintiffs' claim for unjust enrichment against MTGLQ, Nationstar, and Fannie Mae seeks $5,000,000 in total damages for the overcompensation of MTGLQ, Nationstar, and Fannie Mae from the alleged interest miscalculations.  (Am. Compl. ¶¶ 191, 194.)  Because the relief sought is monetary damages, and not equitable relief, the three-year statute of limitations applies. *See St. Martinus Univ.*, 2023 WL 2969284, at *12 (applying three-year statute of limitations for unjust enrichment claim seeking monetary damages).  Given the three-year statute of limitations under Judiciary Law § 487, the longest statute of limitations for Plaintiffs' claims is four years

---

[16]  Defendants argue that Plaintiffs' injuries occurred upon the filing of the judgments of foreclosure of sale because the referee was bound by those judgments when fixing the interest amounts in the referee's reports of sale.  (MTGLQ's and Selene Fin.'s Mem. 21; *see* Nationstar's Mem. 15; Fannie Mae's Mem. 16; Ras Boriskin LLC's Mem. 10–11.)  Even though Plaintiffs allege the fraudulent filings formed the basis of Defendants' scheme to obtain illegal interest, (*see* Am. Compl. ¶ 67, 86, 105), the final interest amounts were not finalized until the filing of the referee's reports of sale.  Nevertheless, the date of accrual is immaterial because Plaintiffs' claims have expired under the statutes of limitations using either date.

pursuant to civil RICO.  Because Plaintiffs' claims accrued, at the latest, five years ago, all of their claims are time-barred.

### ii.    Equitable tolling does not apply to Plaintiffs' claims

Defendants argue the doctrine of equitable tolling, including both the discovery rule and fraudulent concealment, does not apply to any of Plaintiffs' claims.  Generally, MTGLQ, Fannie Mae, Ras Boriskin LLC, and Selene Finance argue that the discovery rule does not apply to Plaintiffs' claims regarding the FDCPA, (MTGLQ's and Selene Fin.'s Mem. 22; Fannie Mae's Mem. 19; Ras Boriskin LLC's Mem. 12), GBL, (Fannie Mae's Mem. 19; Ras Boriskin LLC's Mem. 12), unjust enrichment, (MTGLQ's and Selene Fin.'s Mem. 22; Fannie Mae's Mem. 19), conversion, (MTGLQ's and Selene Fin.'s Mem. 22–23; Fannie Mae's Mem. 19), *prima facie* tort, (Fannie Mae's Mem. 19), or RICO, (Fannie Mae's Mem. 19).  (*See also* Nationstar's Mem. 17, 10–20.)  Second, Defendants argue that Plaintiffs fail to plead fraudulent concealment because the prejudgment interest was publicly disclosed throughout the foreclosure actions and served on Plaintiffs.  (MTGLQ's and Selene Fin.'s Mem. 22–23; Nationstar's Mem. 18–20; Fannie Mae's Mem. 22–23; Ras Boriskin LLC's Mem. 12–13.)  Third, Nationstar argues that the continuing violation doctrine is inapplicable because the interest calculations remained unchanged following the entry of the judgments of foreclosure and sale.  (Nationstar's Mem. 19.)  Fourth, Ras Boriskin LLC argues Plaintiffs cannot plead fraudulent concealment because they "moved (through counsel) in each of their foreclosures to have these interest calculations confirmed."  (Ras Boriskin LLC's Mem. 13; *see* MTGLQ's and Selene Fin.'s Mem. 23–24 (stating that Caldero failed to mention that "he affirmatively moved the [s]tate [c]ourt to confirm and ratify the [r]eferee's calculations when he filed the [m]otion to [c]onfirm and requested the distribution of the [s]urplus [f]unds").)

32

Plaintiffs allege that the statutes of limitations on their claims should be tolled pursuant to the discovery rule and "equitable estoppel (fraudulent concealment tolling)."[17]  (Am. Compl. ¶¶

---

[17]  In the Amended Complaint, Plaintiffs generally argue for tolling the statues of limitations on their causes of action and pleads "discovery rule tolling" and "equitable estoppel (fraudulent concealment tolling)."  (Am. Compl. ¶¶ 207–12.)  In their opposition, Plaintiffs only discuss fraudulent concealment and equitable tolling.  (Pls.' Opp'n 16.)  In their motion papers: (1) MTGLQ and Selene Finance argue against the applicability of both the "discovery rule" and "equitable/fraudulent concealment tolling," (MTGLQ's and Selene Fin.'s Mem. 22–24); (2) Nationstar argues against the applicability of the "discovery rule" and uses "equitable tolling" interchangeably, (Nationstar's Mem. 17–20); (3) Fannie Mae argues against the applicability of both the "discovery rule" and "equitable tolling," (Fannie Mae's Mem. 18–23); and (4) Ras Boriskin LLC argues against the applicability of both the "discovery rule tolling" and "fraudulent concealment tolling," (Ras Boriskin LLC's Mem. 10–13).

The Second Circuit has stated that the terminology in this area is not always used with precision.  *See Poulard v. Delphin*, No. 24-3015, 2025 WL 1417664, at *3 (2d Cir. May 16, 2025) (summary order) ("New York courts and the courts of this Circuit variously use the terms 'fraudulent concealment,' 'equitable tolling' and 'equitable estoppel,' not always with clear delineation." (quoting *Koral v. Saunders*, 36 F.4th 400, 409 (2d Cir. 2022))); *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014) ("The distinction between equitable tolling and the diligence-discovery rule has not always been clear in our caselaw."); *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002) ("The initial difficulty encountered in trying to compare accrual, governed by federal law, with tolling, governed by state law, is that the reported decisions of the federal and state courts do not always mean the same thing by their use of these phrases, and phrases to which some judges ascribe different meanings are used interchangeably by other judges.").  In *Ellul*, the Second Circuit clarified that "the distinction is that the diligence-discovery rule *delays* the date of accrual where the plaintiff 'is blamelessly ignorant of the existence or cause of his injury,' while the doctrine of equitable tolling applies *after* the claim has already accrued, suspending the statute of limitations 'to prevent unfairness to a diligent plaintiff.'"  *Ellul*, 774 F.3d at 801 (first quoting *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982); and then quoting *Haekal v. Refco, Inc.*, 198 F.3d 37, 43 (2d Cir. 1999)).  Fraudulent concealment often incorporates a discovery inquiry into the tolling analysis.  *See, e.g.*, *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 143 (2d Cir. 2025) (describing fraudulent concealment as "either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." (quoting *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988))), *cert. denied*, --- S. Ct. ---, 2026 WL 79895 (Jan. 12, 2026); *SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 21-2697, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023) (summary order) (quoting same); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (a plaintiff must show "(1) the defendant wrongfully concealed material facts relating to [the] defendant's wrongdoing; (2) the concealment prevented [the] plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) [the] plaintiff exercised due diligence in pursuing the discovery of the claim during the period [the] plaintiff seeks to have tolled." (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))).

207–12.)  First, Plaintiffs contend that the discovery rule applies to all claims because they could not have discovered the fraudulent scheme through reasonable diligence, and they did not know the essential elements of their claims until speaking with an attorney in 2024.[18]  (*Id.* ¶¶ 207–09.)  Second, Plaintiffs argue that equitable tolling suspends the applicable statutes of limitations for all claims up until the commencement of this action because Defendants "affirmatively concealed from Plaintiffs and the other members of the [c]lass the[ir] fraudulent scheme."  (*Id.* ¶¶ 210–12; Pls.' Opp'n 17.)  In support, Plaintiffs state that Defendants' improper interest calculation "is not visible to the plaintiff-borrower, the court, nor subordinate lienholders . . . until after the foreclosure auction has occurred and Defendants file the [r]eports of [s]ale."[19]  (Pls.' Opp'n 17.)  Third, Plaintiffs argue that equitable tolling is applicable because "Defendants continue to utilize the improper calculation methods" in the state court actions.  (Am. Compl. ¶ 211.)  Fourth, Plaintiffs argue Defendants "exercise control" over the reports of sale and "there is

_____

Although Plaintiffs plead discovery rule tolling, Plaintiffs do not provide any facts or argument to support delaying the date of accrual.  In fact, Plaintiffs admit that their "claims under every cause of action began accruing the date the [ ] [r]eports of [s]ale was filed on" August 2, 2019 (Caldero), April 13, 2018 (Levien), and November 28, 2018 (Salty).  (Pls.' Opp'n 15.)  Plaintiffs' theory in support of tolling is therefore based on when a reasonably diligent plaintiff would have been aware of the alleged misconduct, applying tolling after the date of accrual and "suspending the statute of limitations to prevent unfairness to a diligent plaintiff."  *See Ellul*, 774 F.3d at 801 (internal citation and quotation marks omitted).  Accordingly, the Court analyzes Plaintiffs' arguments under the fraudulent concealment and equitable tolling doctrines without discussing the discovery rule doctrine.

[18]  In their opposition, Plaintiffs allege a different discovery date of March of 2025.  (Pls.' Opp'n 18.)  Because the Court finds equitable tolling does not apply, Plaintiffs' conflicting arguments is immaterial to the Court's analysis.

[19]  In the Amended Complaint, Plaintiffs state that "the court-appointed referee issues a [r]eferee [r]eport of [s]ale" and call the reports the "[r]eferee's [r]eport of [s]ale."  (Am. Compl. ¶ 34.)  However, in their opposition, Plaintiffs allege Defendants filed the "[r]eport of [s]ale," (Pls.' Opp'n 4, 13), but then refer to the "[r]eferee's [r]eport of [s]ale," or "[r]eports of [s]ale," (*see generally* Pls.' Opp'n.)  Other than their speculation, Plaintiffs have not presented any factual allegations to support or show any involvement by Defendants in the referee's reports of sale.

34

no contemporaneous judicial or adversarial review of the interest calculations before they are used for determining the existence and distribution of surplus proceeds." (Pls.' Opp'n 17.) Fifth, Plaintiffs argue that the "delayed disclosure [ ] functions as a post-hoc concealment tool," leaving Plaintiffs "unaware that Defendants engineered an inflated judgment" until after the sale of the subject properties, and "the surplus [ ] has already been suppressed." (*Id.*) Sixth, Plaintiffs argue that courts in the Southern District of New York recognize equitable tolling of FDCPA claims when defendant-companies and attorneys file false affidavits because the affidavits are "inherently self-concealing." (*Id.* at 17–18.)

The doctrine of equitable tolling "allows a district court to toll the statute of limitations." *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 655 (2d Cir. 1998); *see also Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023) ("Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." (quoting *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000))). For equitable tolling to apply, a litigant must demonstrate "[1] that some extraordinary circumstance stood in her way and [2] that she has been pursuing her rights diligently." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) (internal quotation marks omitted) (quoting *Doe*, 76 F.4th at 71), *cert. denied*, --- S. Ct. ---, 2026 WL 79895 (Jan. 12, 2026); *Watson*, 865 F.3d at 132 (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)); *see also Doe*, 76 F.4th at 71 (noting that a party seeking equitable tolling "must demonstrate . . . that some extraordinary circumstance stood in [her] way and . . . that [she] has been pursuing [her] rights diligently." (alterations in original) (internal quotation marks and citation omitted)); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (noting that a showing of reasonable diligence throughout the period a plaintiff seeks to toll and that some extraordinary circumstance prevented a plaintiff from filing his action in a timely manner are prerequisites for equitable tolling (quoting *Corcoran v. N.Y. Power Auth.*,

35

202 F.3d 530, 543 (2d Cir. 1999))); *Polanco*, 158 F.3d at 655 ("To avail himself of this doctrine, the plaintiff must show that he 'pass[ed] with reasonable diligence through the period [he] seeks to have tolled.'" (alterations in original) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996))). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Watson*, 865 F.3d at 133 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *see McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43–44 (2d Cir. 2020) (rejecting the party's late filing because equitable tolling of exhaustion time applies only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))); *Berrios v. Henri*, No. 18-CV-4194, 2021 WL 6197052, at *3 (E.D.N.Y. Dec. 30, 2021) (quoting same).

Courts will equitably toll statutes of limitations for fraudulent concealment if: "(1) the defendant concealed the existence of the cause of action from the plaintiff; (2) the concealment prevented plaintiff's discovery of the claim within the limitations period; and (3) plaintiff's ignorance of the claim did not result from a lack of diligence." *Saint-Jean*, 129 F.4th at 142 (citing *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988)); *Fromageot v. Britt*, No. 21-CV-1165, 2025 WL 3470473, at *8 (D. Conn. Dec. 3, 2025) (quoting *id.*), *appeal docketed*, No. 26-26 (2d Cir. Jan. 7, 2026); *see Koch*, 699 F.3d at 157 (a plaintiff must show: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." (quoting *Corcoran*, 202 F.3d at 543)). "A plaintiff can prove concealment by showing 'either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be

36

self-concealing.'" *Saint-Jean*, 129 F.4th at 143 (quoting *Hendrickson Bros.*, 840 F.2d at 1083);

*see SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 21-2697, 2023 WL

2620041, at *3 (2d Cir. Mar. 24, 2023) (summary order) (quoting same); *In re Google Digit.*

*Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 271 (S.D.N.Y. 2024) (quoting same), *appeal*

*dismissed*, No. 24-874, 2024 WL 4491699 (2d Cir. Aug. 28, 2024).  Rule 9(b) of the Federal

Rules of Civil Procedure requires that a party alleging fraud or fraudulent concealment "must

state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b);

*Spencer v. Lab'y Corp. of Am. Holdings*, No. 19-CV-4927, 2024 WL 3675855, at *15 (E.D.N.Y.

Aug. 6, 2024) ("A claim of fraudulent concealment must be pled with particularity, in

accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b)." (quoting *Hinds Cty.*

*v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009))), *aff'd*, No. 24-2363, 2025

WL 2779015 (2d Cir. Sep. 30, 2025) (summary order).  "Generalized or conclusory allegations

of fraudulent concealment are insufficient to toll a statute of limitations."  *Singh v. Wells*, 445 F.

App'x 373, 378 (2d Cir. 2011) (citing *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983)).

The "[Second] Circuit has explicitly clarified that 'fraudulent concealment is not essential to

equitable tolling,'" meaning, the application of the doctrine of equitable tolling is not limited to

causes of fraudulent concealment.  *Saint-Jean*, 129 F.4th at 143 (quoting *Valdez ex rel. Donely v.*

*United States*, 518 F.3d 173, 182 (2d Cir. 2008)).

Plaintiffs fail to show the doctrine of fraudulent concealment tolling should apply to their

claims because Plaintiffs have not pleaded facts demonstrating that (1) Defendants concealed

anything fraudulent or Defendants' conduct was self-concealing, (2) the concealment prevented

Plaintiffs' discovery of the claim within the limitations period, or (3) Plaintiffs exercised due

diligence.  First, Plaintiffs allege that "Defendants affirmatively concealed from Plaintiffs and

the other members of the [c]lass the[ir] fraudulent scheme," but then concede that Defendants

"revealed" their "fraudulent scheme to inflate interest calculations in foreclosure judgments" in the referee's reports of sale filed between July of 2016 and November of 2018, and the scheme had also "become[] discoverable" after the foreclosure auctions.  (Am. Compl. ¶¶ 67, 86, 105, 210; Pls.' Opp'n 17.)  Plaintiffs' only allegation of fraud in the Amended Complaint is the miscalculated interest rate that Plaintiffs admit was discoverable in the referee's reports of sale.  (*See* Am. Compl. ¶ 52.)  Thus, the miscalculated interest, which is the basis of Plaintiffs' causes of action, was not affirmatively concealed.  *See Saint-Jean*, 129 F.4th at 144 (finding affirmative concealment when the defendant-mortgage company rushed the plaintiffs to sign documents that excluded the default interest rate and dissuaded the plaintiffs from bringing counsel to the closing).

In addition, Plaintiffs unpersuasively argue that Defendants' affidavits are self-concealing.  First, the miscalculations that Plaintiffs allege were concealed in the affidavits were also provided in the referee's reports of sale.  Plaintiffs cite to *Toohey v. Portfolio Recovery Associates, LLC*, to support their claim that the affidavits made Defendants' fraud "self-concealing," and as a result, Plaintiffs "had no reason to suspect the fraud at an earlier point in time."[20]  (Pls.' Opp'n 17–18 (citing No. 15-CV-8098, 2016 WL 4473016, at *6 (S.D.N.Y. Aug. 22, 2016).)  In *Toohey*, the plaintiff plausibly alleged that the defendant-debt collectors submitted false affidavits claiming they personally reviewed the "account-level documentation" corroborating the debt's existence and amount, when they had not, and failed to attach any account-level documentation.  *Toohey*, 2016 WL 4473016, at *1 n.3, 6–7, 6 n.8.  In addition, the plaintiff alleged that the defendant-debt collectors prohibited the defendant-counsel from directly

---

[20]  The Court notes that Plaintiffs' discussion of *Toohey* and the "self-concealing" nature of Defendants' conduct did not include a discussion of Defendants' affidavits submitted in the state court actions.  Rather than argue how the affidavits were self-concealing, Plaintiffs state that they relied only on the referee's reports of sale to be "true and accurate."  (Pls.' Opp'n 18.)

contacting original creditors and debt sellers and, therefore, the defendant-counsel "could not itself confirm the legitimacy or accuracy of any debt or amount claimed." *Id.* at *3. The court in *Toohey* therefore concluded that the defendants' conduct was self-concealing because it contained information that "*only* the [d]efendants could be aware." *Id.* at *6 (emphasis added). In contrast in this case, the affidavits were filed along with the referee's reports of sale that "revealed" the calculations using the judgment amount instead of the mortgage principal. As a result, the affidavits did not contain information that only Defendants knew because it was included in the record, and therefore Plaintiffs have not shown "self-concealing" fraud. *See Sejin Precision Indus. Co. v. Citibank, N.A.*, No. 16-CV-6910, 2017 WL 4350323, at *5 (S.D.N.Y. June 28, 2017) (finding the plaintiffs failed to allege defendants' fraud was self-concealing through a "general allegation that [the] defendants 'engaged in secret and surreptitious activities' in order to conceal their misconduct"), *aff'd*, 726 F. App'x 27 (2d Cir. 2018); *cf. Michelo*, 419 F. Supp. 3d at 697–98 (finding the defendants' affidavits in their default filings were inherently self-concealing because it alleged information regarding business records only the defendants knew and the plaintiffs could not discover with reasonable diligence); *see also Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12-CV-3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013) ("Failure of a plaintiff to plead facts to suggest that the defendants sought to conceal these violations or [the conduct was self-concealing] . . . deprive[s] the plaintiff of any basis for taking advantage of equitable tolling." (citing *Wade v. Rosenthal, Stein & Assocs.*, No. 11-CV-5672, 2012 WL 3764291, at *3 (E.D.N.Y. Aug. 29, 2012))).

Second, Plaintiffs do not show Defendants' alleged concealment specifically prevented Plaintiffs' discovery of their claims. Plaintiffs allege that the affidavits submitted by Selene Finance, Nationstar, and Seterus, Inc., (Am. Compl. ¶¶ 62, 80, 100), lent legitimacy to the state court actions and allegedly prevented Plaintiffs from exercising reasonable diligence. (Pls.'

39

Opp'n 17–18).  However, Plaintiffs fail to claim inaccuracies in the affidavits or explain their impact on interest calculations.  (*See* MTGLQ's Mem. 25; Nationstar's Mem. 20; Fannie Mae's Mem. 3 n.3; Ras Boriskin LLP's Mem. 8 n.5.)  In addition, Plaintiffs allege without factual support that Defendants' "scheme employed standardized fraudulent calculation methods across dozens if not hundreds of foreclosures," (Pls.' Opp'n 24 (citing Am. Compl. ¶¶ 113, 173)), but Plaintiffs do not name any additional foreclosure action involving Defendants or provide any other factual support for the statement.  Instead, Plaintiffs state that they have "reviewed the dockets of foreclosure actions prosecuted by [Ras Boriskin LLC] and believe[] that there are hundreds of members of the [c]lass."  (Am. Compl. ¶ 113.)  Further, Plaintiffs allege no facts to indicate the referee's or the state court's own determinations in the state court actions were part of a "scheme" or that Defendants' filings "were ratified by the [state] court without any contemporaneous judicial review."  (Pls.' Opp'n 4.)  Plaintiffs only allege the same "inflated interest figures using unlawful methods" were used by Defendants and the referee, and on that basis alone, the state court's determinations were not independent, and Defendants caused Plaintiffs' injuries.  (*Id.* at 11.)  This is insufficient to show that Defendants' conduct alone prevented Plaintiffs from discovering their claims, especially because all of the calculations in the filings were publicly filed.  *See Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32, 35 (2d Cir. 2017) ("[The plaintiff's] attempt to invoke equitable tolling is unavailing because he pleads in only a conclusory fashion that [defendant-]appellees prevented him from discovering the alleged violation."); *Qureshi v. People's United Bank*, No. 18-CV-163, 2020 WL 2079922, at *13 (D. Vt. Apr. 30, 2020) (finding equitable tolling did not apply because the plaintiffs failed "to plead with particularity that [defendant] fraudulently concealed its wrongdoing").

Third, Plaintiffs fail to sufficiently allege reasonable diligence because they do not plead any action taken to investigate their claims, nor do Plaintiffs provide facts from which the Court

40

can infer reasonable diligence.  In the Amended Complaint, Plaintiffs state in conclusory fashion that they "could [not] have discovered, even upon reasonable exercise of diligence," Defendants' fraudulent scheme, (Am. Compl. ¶ 210), and the referee's reports of sale gave them "no reason to question the truthfulness of its content."  (Pls.' Opp'n 18.)  This is contrary to the allegations in the Amended Complaint where Plaintiffs allege that Defendants' interest calculations were "revealed," (Am. Compl. ¶¶ 67, 86, 105).  Thus, Plaintiffs could have conducted their own inquiry.  Further, the state court actions' dockets show that Plaintiffs were represented by counsel in the state court actions, who could have reviewed the filings.[21]  "Generalized or conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations." *Singh*, 445 F. App'x at 378 (citing *Armstrong*, 699 F.2d at 90); *Litovich v. Bank of Am. Corp.*, No. 20-CV-3154, 2025 WL 2521039, at *18 (S.D.N.Y. Sep. 2, 2025) (finding the plaintiffs did not sufficiently plead reasonable diligence because they failed to name a single action they took and pled only conclusory allegations that the defendants' conspiracy and concealing conduct prevented the discovering of their injury); *see Hinds Cty.*, 620 F. Supp. 2d at 521 ("Due diligence is not adequately pled if [the] plaintiffs 'did not allege in the [complaint] that they exercised due diligence' or if they 'make no allegation of any specific inquiries of [the defendants], [or] detail when such inquiries were made, to whom, regarding what, and with what response.'" (alterations

---

[21]  Plaintiffs were represented by counsel in the state court actions.  Caldero was represented by Alexander M. Malteozs.  *MTGLQ Invs. L.P. v. Caldero*, No. 701105/2017 (N.Y. Sup. Ct. Feb. 12, 2022).  Levien was represented by Matthew J. Routh.  *Nationstar Mort. LLC v. Levien*, No. 708111/2015 (N.Y. Sup. Ct. Sep. 13, 2022).  Salty was represented by Jay. S Markowitz.  *Fed. Nat. Mort. Ass'n (Fannie Mae) v. Salty*, No. 503568/2015 (N.Y. Sup. Ct. Nov. 1, 2017).  In addition, Plaintiffs do not allege their counsel's malpractice "is an extraordinary circumstance" that warrants equitable tolling.  However, attorney incompetence alone is usually insufficient to meet the standard for equitable tolling. *Fromageot v. Britt*, No. 21-CV-1165, 2025 WL 3470473, at *10 (D. Conn. Dec. 3, 2025) ("Even where the extraordinary circumstances . . . involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time." (quoting *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004))), *appeal docketed*, No. 26-26 (2d Cir. Jan. 7, 2026).

in original) (quoting *In re Merrill Lynch*, 154 F.3d at 60)); *see also Conklin*, 2013 WL 4083279, at *7 (finding equitable tolling did not apply to the plaintiffs' FDCPA cases because the plaintiffs "relied solely on reassuring statements that [the d]efendants made and thus, were not sufficiently diligent").

In addition to the fraudulent concealment tolling arguments, Plaintiffs' Amended Complaint contains no facts suggesting an "extraordinary circumstance" that might otherwise entitle Plaintiffs to equitable tolling. *See Saint-Jean*, 129 F.4th at 142 (stating equitable tolling requires (1) "that some extraordinary circumstance stood in [the plaintiff's] way" and (2) "that [the plaintiff] pursued [his or her] rights diligently" (quoting *Doe*, 76 F.4th at 71)). Therefore, the Court finds that all of Plaintiffs' claims are time-barred, and equitable tolling does not apply.

### e. *Res judicata* and collateral estoppel

Defendants also move to dismiss the action on the grounds that Plaintiffs' claims are barred by *res judicata* and collateral estoppel. (MTGLQ's and Selene Fin.'s Mem. 13–15; Nationstar's Mem. 12–15; Fannie Mae's Mem. 11–13; Ras Boriskin LLC's Mem. 21–24.) Even though all of Plaintiffs' claims against Defendants are time-barred, the Court nevertheless addresses the parties' arguments regarding *res judicata* and collateral estoppel. For the reasons stated below, the Court finds *res judicata* bars all of Plaintiffs' claims against MTGLQ, Nationstar, Fannie Mae, and Selene Finance, and collateral estoppel bars Plaintiffs' claims against Ras Boriskin LLC, except for the Judiciary Law § 487 claim.

### i. Plaintiffs' claims against MTGLQ, Nationstar, Fannie Mae, and Selene Finance are barred by *res judicata*

Defendants argue that Plaintiffs' claims should be dismissed pursuant to *res judicata* because the state court actions resulted in a final judgment that was "an adjudication on the merits," (MTGLQ's and Selene Fin.'s Reply 7), and the claims could have been raised in the

42

prior action.  (MTGLQ's and Selene Fin.'s Reply 7–8; Nationstar's Mem. 12–14; Fannie Mae's Mem. 11–12; Ras Boriskin LLC's Mem. 21–24.)  First, Defendants argue that Plaintiffs' foreclosure actions were adjudicated on the merits because judgments of foreclosure and sale were entered against them.  (MTGLQ's and Selene Fin.'s Reply 7 (stating that "Caldero concedes that the first prong is satisfied"); Nationstar's Mem. 13; Fannie Mae's Mem. 11–12; Ras Boriskin LLC's Mem. 24.)  Second, Defendants contend that the parties in the federal action are "either identical to, or in privity with, those in the state court proceedings."  (Nationstar's Mem. 13; *see* MTGLQ's and Selene Fin.'s Reply 7–8; Fannie Mae's Mem. 11; Ras Boriskin LLC's Mem. 23.)  Third, Defendants argue that Plaintiffs could have "challenged the calculation of interest, the propriety of the referee's reports, or any alleged misconduct by Defendants by opposing the judgments, moving to vacate, or appealing their interest calculation challenges in the foreclosure actions" during the foreclosure actions.  (Nationstar's Mem. 13; *see* MTGLQ's and Selene Fin.'s Mem. 13–14; Fannie Mae's Mem. 11–12; Ras Boriskin LLC's Mem. 23.)

Plaintiffs argue that *res judicata* does not apply because (1) their claims do not arise out of the same facts that determined the underlying foreclosure judgments, and (2) Defendants lack privity.  (Pls.' Opp'n 8–11.)  First, Plaintiffs argue the instant case and the state court actions involve "completely different causes of action" because they are "unquestionably based on different facts" that "arose independently of the facts relevant to the underlying [state court actions]."  (*Id.* at 9–10.)  Plaintiffs contend that this case "does not concern the origins and assignment of the mortgage" but different facts regarding "Defendants' submission of fraudulent interest calculations during the post-action stage of foreclosure litigation."  (*Id.* at 10.)  Second, Plaintiffs argue Nationstar, Selene Finance, and Ras Boriskin LLC lack "a cognizable personal interest" in the mortgage principle, the subject of the underlying state court actions, and therefore Nationstar, Selene Finance, and Ras Boriskin LLC cannot establish privity with MTGLQ and

43

Fannie Mae.  (*Id.* at 9 (quoting *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022)).)

Federal courts have "consistently accorded preclusive effect to issues decided by state courts."  *Allen v. McCurry*, 449 U.S. 90, 95 (1980).  Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in [the previous] action."  *Kern v. Joyce*, 857 F. App'x 691, 692 (2d Cir. 2021) (quoting *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008)); *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)); *Proctor v. LeClaire*, 715 F.3d 402, 411 (2d Cir. 2013) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996)); *see also Worthy-Pugh*, 664 F. App'x at 22–23 (affirming a district court's decision granting a defendant's motion to dismiss where the district court found that the plaintiff's action for mortgage fraud was precluded by a prior state court foreclosure action).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so . . . ."  *Allen*, 449 U.S. at 96.  To prove claim preclusion under New York law, a defendant must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alteration in original) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)); *see also Hereford Ins. v. Shelly*, 243 N.Y.S.3d 495, 496 (App. Div. 2025) ("One linchpin of *res judicata* is an identity of parties actually litigating successive actions against each other: the doctrine applies only when a claim between the parties has been previously brought to a final conclusion.'" (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021))); *Pawling*

44

*Lake Prop. Owners Ass'n v. Greiner*, 897 N.Y.S.2d 729, 732 (App. Div. 2010) (noting that a stipulation of discontinuance with prejudice is subject to *res judicata*).

The privity inquiry turns on "whether, under the circumstances, the interests of the [defendant] were adequately represented [in the earlier action]." *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 (S.D.N.Y. 2008) (alterations in original) (quoting *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)). New York law provides that privity extends to parties "who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." *Nuseiri v. Kosher Bravo Pizza LLC*, No. 25-CV-764, 2025 WL 3687597, at *3 (E.D.N.Y. Dec. 19, 2025) (quoting *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997)); *see also Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *6 (E.D.N.Y. Mar. 11, 2016) (finding that the defendants, who were not named in a state court foreclosure action, were in privity with the state-court plaintiff because of their alleged interests in the federal plaintiff's/state-court defendant's mortgage); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 (S.D.N.Y. 2016) (same); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171, 171 n.12 (E.D.N.Y. 2010) (same). In addition, New York law provides "a mortgage servicer [is] in privity with mortgage lender for the purposes of *res judicata* as applied to state foreclosure proceedings and subsequent federal court proceedings." *Hall v. Select Portfolio Servicing Inc.*, No. 24-CV-2210, 2025 WL 1042339, at *4 (S.D.N.Y. Jan. 14, 2025) (first citing *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008); and then citing *Fequiere*, 2016 WL 1057000, at *7), *report and recommendation adopted*, 2025 WL 958542 (S.D.N.Y. Mar. 31, 2025); *see Pomeranz v. Shor*, 249 N.Y.S.3d 644, 646 (App. Div. 2026) ("Although relationship alone is not sufficient to support preclusion, "[privity] includes those who are successors to a property interest, those who control an action although not formal parties

45

to it, [and] those whose interests are represented by a party to the action." (alterations in original) (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970))).

The Second Circuit has held that an attorney-client relationship, without more, is insufficient to establish privity between counsel to a party in the prior action and that party itself. *See Hansen*, 52 F.4th at 101 (applying New York law and finding no privity where "[counsel] did not have a cognizable personal interest in the subject of the [prior] action"); *Weir v. Montefiore Med. Ctr.*, No. 23-CV-4468, 2023 WL 5747642, at *4 (S.D.N.Y. Sep. 6, 2023) (finding attorneys were not in privity because an attorney-client relationship alone did not establish privity (citing *id.*)), *reconsideration denied*, 2024 WL 2049411 (S.D.N.Y. May 6, 2024), *aff'd*, No. 24-1527, 2025 WL 289497 (2d Cir. Jan. 24, 2025) (summary order), *cert. denied*, 146 S. Ct. 612 (2025).  Even when the plaintiff's later claims allege misconduct or fraud in the prior action by counsel and the client, it is still insufficient to establish privity.  *See Hansen*, 52 F.4th at 101 ("[The plaintiff's] general and conclusory allegations that [counsel] and [client] 'colluded' in bringing the state suit are insufficient to overcome that deficiency in [counsel's privity] claim . . . ."); *Weir*, 2023 WL 5747642, at *4 (citing *id.*) (same).

MTGLQ, Nationstar, Fannie Mae, and Selene Finance have satisfied the elements of *res judicata*, but Ras Boriskin LLC has failed to establish privity.  First, the state courts entered judgments of foreclosure and sale on the subject properties and confirmation orders against Plaintiffs, which are adjudications on the merits.  *See De Masi v. Country Wide Home Loans*, 481 F. App'x 644, 645 (2d Cir. 2012) (affirming a district court's dismissal of an action on claim preclusion grounds where the plaintiff's action was related to a prior state court foreclosure action because "'[u]nder New York law, a final judgment on the merits of an action precludes' . . . 'all other claims arising out of the same transaction or series of transactions'" (quoting *Giannone*, 548 F.3d at 193–94)); *Gurevitch v. Emerald Green Prop. Owners Ass'n*, No. 23-CV-

46

8156, 2025 WL 642347, at *7 (S.D.N.Y. Feb. 27, 2025) (foreclosure action resulting in judgment of foreclosure is adjudication on the merits) (citing *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 290 (E.D.N.Y. 2024)); *Massie v. Wells Fargo Bank, N.A.*, 734 F. Supp. 3d 196, 201 (D. Conn. 2024) (concluding foreclosure action was an adjudication on the merits where the state court issued a judgment of foreclosure and sale and subsequently issued an order approving the sale); *see also Fequiere*, 2016 WL 1057000, at *5 (holding that a state court's summary judgment order in favor of the foreclosure plaintiff "operate[d] as a final adjudication on the merits for *res judicata* purposes").

Second, MTGLQ, Nationstar, and Fannie Mae were parties in the state court actions. *See Burton*, 738 F. Supp. 3d at 290 (finding the second element was met where the plaintiff was a defendant in the foreclosure action). Selene Finance has established privity with MTGLQ because it was the mortgage servicer for the Caldero loan, and Nationstar has established privity with Fannie Mae because it was the mortgage servicer for the Salty Loan.[22] *See Hall*, 2025 WL 1042339, at *4 (finding the defendant-mortgage servicer was in privity with the defendant-mortgage lender for the purposes of *res judicata* as applied to state foreclosure proceedings and subsequent federal court proceedings).

Ras Boriskin LLC, however, has not established privity with MTGLQ, Nationstar, and Fannie Mae in the state court actions, as required for the *res judicata* bar to apply, because Ras Boriskin LLC does not argue that it has a "cognizable personal interest in the subject of the state foreclosure action" beyond the attorney-client relationship, nor does it argue other circumstances such that privity would be appropriate. *See Hansen*, 52 F.4th at 101 (finding counsel was not in

---

[22] As discussed *supra* in n.10, Nationstar argues that Plaintiffs cannot impose the liability of Seterus, Inc., the mortgage servicer on the Salty Subject Property "at all relevant times," onto Nationstar. (Nationstar's Mem. 32–33.) The Court does not address this argument.

47

privity with their client for purpose of *res judicata* because counsel only alleged an attorney-client relationship in the state court foreclosure action); *Gurevitch*, 2025 WL 642347, at *7 (same).  In addition, Ras Boriskin LLC has failed to demonstrate privity because it does not point to any allegations establishing its interests were aligned with the parties to the state court actions apart from its attorney-client relationship with MTGLQ, Nationstar, and Fannie Mae.  *See Nuseiri v. Kosher Bravo Pizza LLC*, No. 25-CV-764, 2025 WL 3687597, at *3 (E.D.N.Y. Dec. 19, 2025) (finding the defendants failed to establish privity by failing to allege facts demonstrating their interests were represented in the earlier litigation); *Jones v. Grisanti*, No. 22-CV-145, 2024 WL 3415361, at *10 (W.D.N.Y. July 15, 2024) (finding counsel was not in privity with defendant-bank in state foreclosure action because counsel did not argue that they had a "cognizable personal interest" in the state foreclosure action, "nor do they point to any particular circumstances indicating that a finding of privity would be appropriate here").

Lastly, Plaintiffs' claims could have been brought in the state court actions.  Plaintiffs assert claims based on Defendants' alleged misconduct during the state court actions, including that the judgments of foreclosure and sale authorized "illegal" compound interest, (Am. Compl. ¶ 48), the inclusion of allegedly incorrect interest calculations in the referee's reports of sale, (*id.*), and the state court's confirmation of those calculations, (*id.* ¶ 50).  Plaintiffs' argument that this case involves "completely different causes of action" that arose "independently" of the state court actions during the post-action stage of the foreclosure litigation, (Pls.' Opp'n 9–10), directly contradicts their pleading where Plaintiffs allege that "a foreclosure action does not end immediately after the foreclosed property is sold," (Am. Compl. ¶ 66), but continues with the referee's reports of sale that "revealed the Defendants' fraudulent scheme," (*id.* ¶¶ 67, 86, 105).  Therefore, Plaintiffs' allegations of misconduct concern Defendants' actions prior to and during the state court actions which were "revealed" in the state court actions' filings before the

confirmation orders.  (*Id.*)  *See Garcha v. City of Beacon*, 232 F. App'x 74, 75 (2d Cir. 2007)

("Later claims arising out of the same factual grouping as an earlier litigated claim are barred,

even if the later claims are based on different legal theories or seek dissimilar or additional

relief.").

In support of their argument that the claims in this case involve different facts, Plaintiffs

cite to cases where courts found *res judicata* did not bar the plaintiffs' claims involving newly

alleged facts of the defendants' fraudulent scheme of filing false and deceptive documents in the

underlying debt collection proceedings.  (Pls.' Opp'n 10 (first citing *Toohey*, 2016 WL 4473016,

at *5; and then citing *Michelo*, 419 F. Supp. 3d at 679–81).)[23]  Those cases can be distinguished

because they involved significantly more voluminous allegations of fraud that revealed facts not

present in the underlying debt-collection lawsuits.  *See Toohey*, 2016 WL 4473016, at *3–5 (*res*

*judicata* did not apply because the plaintiff alleged the debt-buying company submitted affidavits

without "account-level documentation" in thousands of cases and prohibited the debt-buying

company's law firm from directly contacting original creditors and debt sellers and, therefore,

the debt-buying company's law firm "could not itself confirm the legitimacy or accuracy of any

debt or amount claimed" in the state debt-collection action); *see also Michelo*, 419 F. Supp. 3d at

690 (*res judicata* did not apply because the plaintiff alleged that the defendants provided

affidavits with deceptive statements revealing facts that "were not at all 'present in the [ ]'

---

[23]  Plaintiffs also cite to *Clark v. Cavalry Portfolio Servs., LLC*, No. 17-CV-99, 2017 WL 6757224, at *4 (S.D.N.Y. 2017).  In *Clark*, the plaintiff's cause of action based on allegedly false statements concerning interest owed in the state court action was barred by *res judicata*, but the plaintiff's cause of action asserting deceptive filings was not barred by *res judicata*.  *Id.*  The court in *Clark* found the claim was not barred by *res judicata* because the claim arose from facts unrelated to the defendants' right to collect on the underlying debt.  *Id.*  In contrast, Plaintiffs have not alleged any facts in this case that are separate from Defendants' right to collect on the mortgage and the information in the Nationstar (through Seterus, Inc.) and Selene Finance affidavits were on the record in the state court actions.  Accordingly, *Clark* does not support Plaintiffs' argument.

49

[foreclosure] proceeding" in at least six specific instances).  Although Nationstar and Selene Finance submitted affidavits in the state court actions, unlike *Toohey* and *Michelo*, the accounting of the debt in this case was fully "revealed" on the record and Plaintiffs could have challenged the accuracy of the calculations and final judgment amount in the state court actions. In addition, Plaintiffs solely rely on the interest miscalculation by Defendants to allege fraud and then speculates about unlawful submissions in other state and federal court proceedings without providing any support.  (*See* Am. Compl. ¶ 14.)  Thus, Plaintiffs could have asserted all of their claims in the state court actions as counterclaims because they are based on conduct revealed in the state court actions.[24]  *See De Masi*, 481 F. App'x at 646 ("[T]he district court correctly determined that [the plaintiff] was precluded from relitigating her claims in federal court because the New York Supreme Court had previously entered final judgment in three cases arising out of

---

[24]  Although New York State follows permissive counterclaim rules, "the Second Circuit has interpreted New York's *res judicata* law [ ] broadly to 'apply to all claims that could have been raised in a prior proceeding.'"  *Bordonaro v. FCI Lender Servs., Inc.*, No. 22-CV-2545, 2025 WL 2753175, at *4 (E.D.N.Y. Sep. 28, 2025) (quoting *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871, 2020 WL 1151313, at *11 (S.D.N.Y. Mar. 9, 2020), *appeal dismissed*, No. 20-1138 (2d Cir. Aug. 4, 2020)); *see also Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 295 (E.D.N.Y. 2024) (holding plaintiff's claims for FDCPA, Truth in Lending Act ("TILA"), and GBL § 349 were based on the same facts as the underlying foreclosure action and were therefore barred by *res judicata*); *Ozuzu v. Greenpoint Mortg. Funding*, No. 19-CV-3783, 2020 WL 5658776, at *10 (E.D.N.Y. Sep. 23, 2020) ("To the extent [RICO and GBL § 349] claims were not raised in the state foreclosure actions, they could have been raised in those actions as they are part of the same transaction[] at issue there — [ ] the foreclosure of the property."); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (finding that the RICO, FDCPA, Consumer Fraud Protection Act, and Real Estate Settlement Procedure Act ("RESPA") claims asserted by the plaintiff "either were, or could have been, raised in the [foreclosure] [a]ction" and noting that "a later claim could have been raised in the prior action if it 'aris[es] out of the same factual grouping as [the] earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief'" (third and fourth alterations in original) (quoting *Segreto v. Town of Islip*, No. 12-CV-1961, 2013 WL 572435, at *11 (E.D.N.Y. Feb. 12, 2013))); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (finding the plaintiffs' RICO claims barred because they were based on "the allegation that [the] defendants improperly obtained a [j]udgment of [f]oreclosure and [s]ale").

the same set of operative facts, namely, the . . . foreclosure on [the plaintiff's] home."); *Ank Bey El v. CitiMortgage, Inc.*, No. 25-CV-2317, 2025 WL 3552702, at *17 (E.D.N.Y. Dec. 11, 2025) (finding *res judicata* barred all of the plaintiff's claims which stemmed from the state court foreclosure action); *Massie*, 734 F. Supp. 3d at 201 (barring the plaintiff from raising claims that arose out of the same mortgage transaction as the prior foreclosure action including claims premised on a "false affidavit" filed in the prior foreclosure action because they could have been raised in that prior action); *Swiatkowski*, 745 F. Supp. 2d at 172 (finding that the plaintiff's claims were or could have been brought in a state court foreclosure action where the plaintiff's claims were based on "the allegation that [the] defendants improperly obtained a [j]udgment of [f]oreclosure and [s]ale against [the plaintiff]"); *see also Fequiere*, 2016 WL 1057000, at *7 (finding that the plaintiff's claims alleging "that [the] defendants improperly obtained [a] [f]oreclosure [j]udgment" were or could have been brought in a state foreclosure action against her property); *Graham*, 156 F. Supp. 3d at 509 (collecting cases and finding that a plaintiff's claims were or could have been brought in a state court foreclosure action because "New York courts have held that a defendant in a foreclosure action should assert claims . . . [related to] the mortgage agreement as defenses against the plaintiff lender in the original foreclosure action").

Accordingly, Plaintiffs' claims against MTGLQ, Nationstar, Fannie Mae, and Selene Finance, including claims arising under the FDCPA, GBL § 349, RICO, unjust enrichment, *prima facie* tort, and conversion are barred by *res judicata*.[25]  *See Burton*, 738 F. Supp. 3d at 295

---

[25] Since the Court finds that all of Plaintiffs' claims against MTGLQ, Nationstar, Fannie Mae, and Selene Finance are barred by *res judicata*, the Court does not address (1) the collateral estoppel arguments made by MTGLQ, Nationstar, Fannie Mae, and Selene Finance, (MTGLQ's and Selene Finance's Mem. 14–15; Nationstar's Mem. 14–15; Fannie Mae's 12–13), and (2) the *Noerr-Pennington* doctrine argument made by Fannie Mae, *i.e.*, that Salty's claims are barred because Fannie Mae's pursuit and recovery of such pre-judgment interest was entirely lawful, (Fannie Mae's Mem. 15–16).

(holding that *res judicata* barred the plaintiff's claims for FDCPA, TILA, and GBL § 349 because they arose "out of the same transaction or series of transactions" as the issue in the foreclosure action); *Pennicott v. JPMorgan Chase Bank, N.A.*, No. 21-CV-4575, 2022 WL 4226025, at *3 (S.D.N.Y. Sep. 13, 2022) (*res judicata* barred claims the plaintiff intended to assert for breach of fiduciary duty, accounting, conversion, constructive trust, replevin, intentional misrepresentation, and breach of contract because they could have been litigated in the foreclosure action); *Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397, 2019 WL 1429982, at *12 (S.D.N.Y. Mar. 29, 2019) (holding the plaintiff's RICO, wire fraud and fraud and deceit, FDCPA, RESPA, TILA, and unjust enrichment claims were barred by *res judicata* because they were available to plaintiff in state foreclosure proceedings), *aff'd*, 820 F. App'x 20 (2d Cir. 2020).

### ii. Collateral estoppel bars Plaintiffs' claims against Ras Boriskin LLC, except for the Judiciary Law § 487 claim

Ras Boriskin LLC argues collateral estoppel bars Plaintiffs' claims "for many of these same reasons" as the application of *res judicata*. (Ras Boriskin LLC's Mem. 23–24.)  In support, Ras Boriskin LLC contends the state court actions were "fully and fairly litigated" and the state courts necessarily determined the issues. (*Id.* at 23.)

Plaintiffs argue that collateral estoppel does not apply because (1) this case involves "vastly different issues of fact" than the state court actions, and (2) Plaintiffs did not have a full and fair opportunity to litigate the issues with Defendants. (Pls.' Opp'n 12–13.)  In support, Plaintiffs assert similar arguments as their *res judicata* arguments.  First, Plaintiffs contend that this case does not involve facts relevant to the judgments of foreclosure and sale, but rather, Defendants' "unlawful methods" of interest calculation which they submitted to the referee after the entry of the judgments of foreclosure and sale. (*Id.* at 12.)  Second, Plaintiffs allege they did

52

not have a full and fair opportunity to litigate the issues because of the "self-concealing nature of Defendants' fraudulent scheme." (*Id.* at 12–13.)  Third, Plaintiffs argue it is "more prudent to prosecute Defendants in a different suit that specifically addresses the fraud and a venue appropriate for federal claims, rather than using the state foreclosure proceeding to resolve a wholly new case." (*Id.* at 13.)

Under New York law, issue preclusion, or collateral estoppel, bars the relitigation of issues where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Oliver v. D'Amico*, No. 22-979, 2024 WL 2013670, at *2 (2d Cir. May 7, 2024) (summary order) (quoting *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007)); *Scuderi-Hunter v. Merklen*, No. 23-542, 2024 WL 1005793, at *2 (2d Cir. Mar. 8, 2024) (summary order) (quoting *Hoblock*, 422 F.3d at 94); *CIT Bank, N.A. v. Donovan*, 856 F. App'x 335, 337 (2d Cir. 2021) (quoting *Hoblock*, 422 F.3d at 94); *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (quoting *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006)); *Cruz v. N.Y.C. Transit*, No. 24-CV-89, 2025 WL 209598, at *9 (S.D.N.Y. Jan. 16, 2025) (quoting *Moccio v. N.Y. State Off. of Ct. Admin.*, 95 F.3d 195, 200 (2d Cir. 1996)), *report and recommendation adopted sub nom.*, *Cruz v. N.Y.C. Transit Auth. - MTA*, No. 24-CV-89, 2025 WL 618557 (S.D.N.Y. Feb. 26, 2025), *appeal dismissed sub nom.*, *Cruz v. N.Y.C. Transit, MTA*, No. 25-729, 2025 WL 2747900 (2d Cir. July 24, 2025). Collateral estoppel does not require identical parties, but "[t]he party advocating for a court to apply collateral estoppel must show 'that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party.'" *Hansen*, 52 F.4th at 101 (quoting *Buechel v. Bain*, 740 N.Y.S.2d 252 (2001)).  The collateral estoppel analysis under New York law is essentially the same as under federal law. *See Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d

53

Cir. 2003) ("Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action."); *Koch v. Bobcat of N.Y., Inc.*, No. 19-CV-7081, 2025 WL 746023, at \*5 n.10 (E.D.N.Y. Mar. 7, 2025) ("[E]ven if the [c]ourt were to engage in the collateral estoppel analysis applied under New York law, the result here would be the same."); *M.J. Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 580 (S.D.N.Y. 2003) ("The doctrine of collateral estoppel — also known as issue preclusion — operates almost identically under federal and New York State law . . . ." (citing *Postlewaite*, 333 F.3d at 47–48)).  Under federal law, the four elements of collateral estoppel are: "(1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits."  *Clark v. Hanley*, 89 F.4th 78, 100 n.28 (2d Cir. 2023) (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999)); *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79–80 (2d Cir. 2019) (quoting *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005)); *United States v. Dominguez*, 712 F. App'x 100, 102 (2d Cir. 2018) (quoting *Gelb v. Royal Globe Ins.*, 798 F.2d 38, 44 (2d Cir. 1986)).

1. **Plaintiffs' claims against Ras Boriskin LLC arising under FDCPA, GBL § 349, RICO, negligence, gross negligence, legal malpractice, *prima facie* tort, and conversion**

Plaintiffs' claims for FDCPA, GBL § 349, RICO, negligence, gross negligence, legal malpractice, *prima facie* tort, and conversion rest exclusively on Plaintiffs' underlying allegations that Defendants filed fraudulent or deceptive documentation with interest miscalculations in the state court actions.  (*See* Am. Compl. ¶¶ 48, 50, 67–71, 73, 86–90, 92,

54

105–109, 111.) The state court decided against Plaintiffs in the state court actions when it determined the interest calculations and foreclosure were valid. *See Hansen*, 52 F.4th at 101 (finding collateral estoppel barred the plaintiff's fraud and negligence claims against the attorney-defendants because the plaintiff's claims were based on attorney-defendants' alleged fraudulent representations in the foreclosure litigation except for plaintiff's Judiciary Law § 487 claim); *Weir*, 2023 WL 5747642, at *6 (finding collateral estoppel barred the plaintiff's claims against the attorney-defendants, except for his Judiciary Law § 487 claim, because the underlying allegations "rise or fall on his underlying allegations of discrimination and other misconduct by the [represented-defendants]").

As stated *supra* in Section II.d.ii, Plaintiffs' claims against Ras Boriskin LLC, including FDCPA, GBL § 349, RICO, negligence, gross negligence, legal malpractice, *prima facie* tort, and conversion, are based solely on facts supporting the state court actions, including interest miscalculations in false or fraudulent filings on behalf of MTGLQ, Nationstar, Fannie Mae, and Selene Finance. While Ras Boriskin LLC is not in privity with Plaintiffs, MTGLQ, Nationstar, Fannie Mae, or Selene Finance, the state court decided against Plaintiffs in the state court actions, and Plaintiffs' claims are therefore barred by collateral estoppel. *See Hansen*, 52 F.4th at 101 (finding that attorney defendants "need not be in privity with the state court parties to assert a collateral estoppel bar" because "for collateral estoppel to act as a bar, the party *against* whom the issue was previously decided must be the same as or in privity with the party raising the issue in the present action"); *see also Munroe v. Specialized Loan Servicing LLC*, No. 23-CV-3083, 2025 WL 974259, at *5 (E.D.N.Y. Mar. 31, 2025) (collateral estoppel barred the plaintiff's FDCPA claim based on the state foreclosure action); *Helberg v. Wells Fargo Bank, Nat'l Ass'n*, No. 23-CV-8073, 2025 WL 581495, at *9 (E.D.N.Y. Jan. 22, 2025) (finding collateral estoppel barred the plaintiffs' causes of action for TILA, common law fraud,

conspiracy to commit common law fraud, forgery, and breach of contract because the state court "necessarily decided that the mortgage agreement and any relevant attending documents were valid" in the underlying foreclosure action), *report and recommendation adopted*, 2025 WL 580368 (E.D.N.Y. Feb. 21, 2025); *Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition, LP*, No. 21-CV-826, 2023 WL 8283148, at *6 (E.D.N.Y. Nov. 30, 2023) (holding collateral estoppel barred the plaintiff's claims raised for the first time in the federal court action regarding the defendants' fraudulent conduct in the state court foreclosure action), *aff'd sub nom.*, *Mendez v. Pretium Mortg. Credit Partners*, No. 23-8057, 2024 WL 4691006 (2d Cir. Nov. 6, 2024) (summary order); *Holmes v. Caliber Home Loans, Inc.*, No. 16-CV-3344, 2017 WL 3267766, at *8 (S.D.N.Y. July 31, 2017) (finding collateral estoppel barred the plaintiff's fraud-based claims against the defendants, including RICO and GBL § 349, based on prior state foreclosure action).

Further, Plaintiffs' argument that the affidavits submitted by Seterus, Inc., now Nationstar, and Selene Finance prevented them from fully and fairly litigating the interest calculations is unavailing because Plaintiffs contend that Ras Boriskin LLC's alleged fraudulent or negligent acts were "revealed" on the record prior to the confirmation orders.[26]  (*See* Am. Compl. ¶¶ 67, 86, 105; Pls.' Opp'n 10–11.)  Accordingly, collateral estoppel bars Plaintiffs' claims against Ras Boriskin LLC including claims under FDCPA, GBL § 349, RICO, negligence, gross negligence, legal malpractice, *prima facie* tort, and conversion.

---

[26] The Court discusses Plaintiffs' argument that the Nationstar and Selene Finance affidavits were "self-concealing" *supra* in Section II.d.ii.

## 2. Plaintiffs' claim against Ras Boriskin LLC arising under Judiciary Law § 487

The Second Circuit has distinguished Judiciary Law § 487 claims from fraud claims because "the central question in a [Judiciary Law §] 487 action is not 'whether the court or party to whom the statement is made is actually misled by the attorney's intentional false statements' (as it is in a fraud claim), but rather whether the false statements were made 'intentional[ly].'" *Hansen*, 52 F.4th at 102 (alteration in original) (first quoting *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 178 (2020); and then citing *Amalfitano v. Rosenberg*, 12 N.Y.3d 8 (2009)).

The question of Ras Boriskin LLC's intent to deceive Plaintiffs as the attorney representing MTGLQ, Nationstar, and Fannie Mae in the state court actions has not been litigated. To the extent this claim concerns Ras Boriskin LLC's intent to deceive, it is not barred by collateral estoppel. *Id.* (finding collateral estoppel did not bar the plaintiff's Judiciary Law § 487 claim because it "do[es] not depend entirely on a finding that the [underlying mortgage] was invalid").

However, as discussed above, the statutes of limitations bar all of Plaintiffs' claims against Defendants, including Plaintiffs' Judiciary Law § 487 claim. In addition, *res judicata* bars all of Plaintiffs' claims against MTGLQ, Nationstar, Fannie Mae, and Selene Finance, and collateral estoppel bar Plaintiffs' claims against Ras Boriskin LLC, except for the Judiciary Law § 487 claim.[27]

---

[27] The Court does not address the merits of Plaintiffs' claims because each claim is barred by the applicable statute of limitations (FDCPA, GBL § 349, RICO, Judiciary Law § 487, negligence, gross negligence, legal malpractice, unjust enrichment, *prima facie* tort, and conversion) and on other grounds: *res judicata* bars all claims against MTGLQ, Nationstar, Fannie Mae, and Selene Finance, and collateral estoppel bars the FDCPA, GBL § 349, RICO, negligence, gross negligence, legal malpractice, *prima facie* tort, and conversion claims against Ras Boriskin LLC.

### III.   Conclusion

For the foregoing reasons, the Court grants Defendants' motions and dismisses the

Amended Complaint.

Dated:  March 27, 2026
        Brooklyn, New York

                         SO ORDERED:


                           /s/ MKB
                        MARGO K. BRODIE
                        United States District Judge